IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILIP J. SWEITZER,                                    *

Plaintiff                                              *

v                                                      *    Civil Action No. GLR-17-1741

COLLEEN McGUINN, Esq., Senior                          *
   Assistant State's Attorney,
DARIO J. BROCCOLINO, Esq., State's                     *
   Attorney, Howard County,
STATE OF MARYLAND, Nancy K. Kopp,                      *
   Treasurer,
JOHN or JANE DOE GRAND JURORS                          *
   1-23,
DEPARTMENT OF MARYLAND STATE                           *
   POLICE,
WILLIAM TALBERT, TFC,                                  *
TFC JOHN DOE,
JOHN DOE HOWARD COUNTY POLICE                          *
   OFFICER or JOHN DOE SHERIFF'S
   DEPUTY #1,                                          *
JOHN DOE HOWARD COUNTY POLICE
   OFFICER or JOHN DOE SHERIFF'S                       *
   DEPUTY #2,
CHARLES P. STRONG, Esq., State's                       *
   Attorney,
JANE DOE, Esq. Assistant State's Attorney              *
ATTORNEY GRIEVANCE COMMISSION
   of MARYLAND,                                        *
GLENN M. GROSSMAN, Esq., Bar
   Counsel,                                            *
RAYMOND HEIN, Esq., Deputy Bar
   Counsel,                                            *
MARIANNE J. LEE, Esq., Senior Assistant
   Bar Counsel,                                        *
MARC FIEDLER, Investigator,
BRIAN E. FROSH, Esq., Attorney General,                *
RYAN DIETRICK, Esq., Assistant
   Attorney General,                                   *
The Honorable DENNIS M. SWEENEY,

THE COURT OF SPECIAL APPEALS OF     *
  MARYLAND,

The Honorable MARY ELLEN BARBERA, *
  Chief Judge,

The Honorable CLAYTON GREENE, JR.,     *

The Honorable MICHELE D. HOTTEN,

The Honorable ROBERT N. McDONALD,     *

The Honorable SHIRLEY M. WATTS,

The Honorable SALLY D. ADKINS,               *

The Honorable JOSEPH M. GETTY,

The Honorable KEVIN F. ARTHUR,             *

The Honorable DEBORAH S. EYLER,

The Honorable LAWRENCE RODOWSKY, *

THE TRUSTEES of the CLIENT
  PROTECTION FUND of the BAR of     *
  MARYLAND,

JANET C. MOSS, Executive Director,     *

LEO WESLEY OTTEY, JR., Esq.,

JAMES F. FITZGERALD, Sheriff,     *

JOHN DOE, Deputy Sheriff,

JANE DOE, Deputy Sheriff,     *

THE CIRCUIT COURT for HOWARD
  COUNTY,     *

WAYNE A. ROBEY, Clerk

DEPARTMENT OF PUBLIC SAFETY and     *
  CORRECTIONAL SERVICES,

STEVEN T. MOYER, Secretary,     *

JENNIFER FRANKENBERRY,

The Honorable TIMOTHY J. McCRONE,     *

The Honorable WILLIAM V. TUCKER,

The Honorable DANIEL P. DWYER,     *

HOWARD COUNTY, MARYLAND,

ALLEN H. KITTLEMAN,     *

HOWARD COUNTY DEPARTMENT of
  CORRECTIONS, Jack Kavanagh,     *
  Director,

JOHN or JANE DOES 1-20 Correctional     *
  Officers

RICHARD W. TURNER, Ph.D., Chief     *
  Executive Officer,

JOHN DOE #1, M.D.,     *

CHIEF MEDICAL OFFICER

JOHN DOE #2, M.D.,     *

CONMED HEALTHCARE
   MANAGEMENT, INC.,                    *
ALLAN TSAI, D.D.S.,
CLARKE F. AHLERS, Esq.,                 *

Defendants                              *

## MEMORANDUM OPINION

On June 26, 2017, Plaintiff Philip J. Sweitzer, a resident of Gettysburg, Pennsylvania, filed a 185-page complaint, captioned as a civil rights action naming more than fifty Defendants, accompanied by exhibits, the full filing fee, and a civil cover sheet. (Compl., ECF No. 1). By Order dated July 6, 2017, Sweitzer was granted leave to amend his complaint in order to comply with Fed. R. Civ. P. 8(a). (ECF No. 2). Sweitzer's amended complaint, submitted August 4, 2017, which contains 27 counts and 157 pages, is now before the Court for initial review. (Am. Compl., ECF No. 5). Also pending before the Court is Sweitzer's Motion to Recuse (ECF No. 7). For reasons set forth herein, with one exception, the Court will dismiss Sweitzer's claims and deny the Motion.[1]

## I.     BACKGROUND

At its core, the amended complaint seeks compensatory and punitive damages and injunctive relief based on actions by the "Judiciary and Executive" . . . "to align their respective interests . . . to subvert and deny him due process of law to unconstitutionally procure his unlawful conviction and subsequent disbarment . . ." (Am. Compl. at 9).

---

[1] Nancy K. Kopp, Treasurer for the State of Maryland, is named in the caption of the amended complaint, but appears to play no role in the matters at issue in this case. Kopp is entitled to summary dismissal.

Federal jurisdiction over the claims is premised on the civil rights statutes, 42 U.S.C. §§ 1983 and 1985, as well as 28 U.S.C. § 1331. Sweitzer also requests this Court take supplemental jurisdiction over "related and derivative state law claims" pursuant to 28 U.S.C. § 1367. Read in conjunction with the accompanying exhibits and information gleaned from Maryland's judiciary website,[2] Sweitzer's complaint, as amended, alleges the following facts.

Prior to November 4, 2016, Sweitzer had a license to practice law in Maryland. (Am. Compl. at 26). During 2007 and 2008, he was one of several lawyers representing a criminal defendant, Abdel Khader Diallo, in the Circuit Court for Baltimore County, Maryland. Due to a stroke, Sweitzer was unable to attend the May 9, 2009, oral argument in the Court of Appeals of Maryland. (Id. at 40–42).

During this time, and while recovering from his illness, Sweitzer withdrew funds, causing an overdraft in a client escrow account.[3] As a result, Assistant Bar Counsel Lee initiated an inquiry on behalf of the Maryland Attorney Grievance Commission. (Id. at 43). It does not appear that Sweitzer received formal sanction based on this incident.

In February of 2011, Sweitzer agreed to represent Dr. Allen Tsai, a dentist who

---

[2] Judicial notice will be granted for the purpose of pending motion review. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Goldfarb v. Mayor of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015). Under Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

[3] Sweitzer states that he believed the funds were available in reliance on a banking error.

had been denied benefits under a disability insurance policy. In December of 2011, Tsai asked Sweitzer to represent him in a copyright infringement lawsuit brought against Tsai by a film production company. (Id. at 45–47). Tsai also asked Sweitzer to represent him in a case against Dr. Robert Gerwin for abandoning him as a patient and as his medical expert in the insurance claim. Sweitzer indicates Tsai prevailed on his insurance claim and, on May 21, 2012, met with Sweitzer and turned over the entire settlement proceeds, amounting to $54,000.00, to Sweitzer for both the insurance claim and work performed to date in the copyright infringement action. (Id. at 47–48). On June 1, 2012, Sweitzer deposited the settlement proceeds into an IOLTA account at a Panama City, Florida branch of PNC Bank, N.A. (Id. at 49).

In late September, 2012, Tsai wrote Sweitzer to demand a refund of the insurance proceeds. On October 5, 2012, Tsai further requested Sweitzer continue to represent him in the copyright matter, but on full contingency. The next day, October 6, 2012, Sweitzer offered to refund all fee and expense proceeds in both the copyright case and the Gerwin matter. (Id. at 51–52). By that time, however, Tsai had already complained to the Howard County, Maryland State's Attorney that Sweitzer had committed a theft.[4] On February 13, 2013, a Howard County grand jury returned an indictment for theft over $10,000.00. Sweitzer states that Assistant Bar Counsel Lee appeared before the grand jury. (Id. at 52).

_____

[4] See Maryland v. Sweitzer, Case No. 5T0007925 (Dist. Ct. How. Co) available at http://casesearch/courts.state.md.us/casesearch/inquiryDetail.jis?. The case was nolle prossed on November 9, 2012, and later pursued as a Circuit Court criminal matter.

Sweitzer was not immediately arrested following his indictment.[5]  On March 19, 2013, while driving from BWI Airport to Hagerstown, Maryland, Sweitzer was pulled over by Maryland State Trooper First Class Talbert, and charged with several traffic violations.  The Howard County Circuit Court warrant was discovered and Sweitzer was taken into custody and transported to the Howard County Detention Center.  He was released on bond the next day.  (Id. at 53–54).

Sweitzer was found guilty on April 28, 2014, and was sentenced to five years of incarceration, all but four years suspended, with two years of supervised probation upon release.  See Maryland v. Sweitzer, Case No. 13-K-13053059 (Cir. Ct. How. Co.), http://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis.  He was remanded to the custody of the Howard County Department of Corrections, where he remained from October 7, 2013 until June 25, 2014.  He alleges he was denied proper medical care and subjected to unconstitutional conditions of confinement during this time.  (Am. Compl. at 61–63).

Immediately upon release from his Howard County sentence, Sweitzer was transported to the District Court for Washington County where, on June 26, 2014, his traffic violations were nolle prossed.[6]  Sweitzer asserts that this transfer would not have

---

[5] Read in its totality, the Amended Complaint suggests Sweitzer was in Florida, where he was establishing a second residence.

[6] See Case Nos. 1VY0BQC (driving on cancelled out of state license), http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis? and IVX0BQC (driving on suspended license) (Dist. Ct. Wash. Co), http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?  Both are cited by Sweitzer in his Amended Complaint. (Am. Compl. at 52).  The charges were nolle prossed on May 6, 2014.  (Id.).

been necessary had he received notice of the hearing date for the traffic violations while incarcerated.  (Id. at 63–64).

On May 8, 2014, the Circuit Court for Howard County entered a civil judgment from the criminal restitution order that resulted from Sweitzer's theft conviction.  See Tsai v. Sweitzer, Case No. 13-C-55-076156 (Cir. Ct. How. Co.).  The Client Protection Fund later sought enforcement of the judgment, beginning on or about November 24, 2014.  (Am. Compl. at 65).

Sweitzer was suspended from legal practice on September 22, 2014, on Bar Counsel's Petition for Disciplinary Action, pursuant to an order by the Honorable Mary Ellen Barbera, Chief Judge of the Court of Appeals of Maryland.  (Id. at 66).  Sweitzer alleges that his appeal brief attacking his suspension disappeared from the Office of the Clerk of the appellate court, and should be construed as an attempt by court personnel to "intentionally manipulate[ed] the appeal" process.  (Id. at 67).  Sweitzer's motion to terminate the petition for disciplinary action pending appeal was denied on May 21, 2015 by the Court of Appeals, and on May 26, 2015, Court of Special Appeals Judge Arthur of the  affirmed the trial court and denied Sweitzer relief.  Further review was denied by the Court of Appeals on August 12, 2015.  (Id. at 68–69).  Sweitzer outlines a multiplicity of additional claims of procedural defects in the handling of his disciplinary proceedings that ended in termination of his law license, including contempt proceedings filed in Tsai v. Sweitzer.  (Id. at 74–78).

While Sweitzer's petition for writ of certiorari attacking the theft conviction was pending in the United States Supreme Court, on July 15, 2015, the Department of Parole

and Probation charged Sweitzer with a violation of probation for failure to satisfy the obligation for restitution. Sweitzer pleads that the Client Protection Fund was already enforcing this obligation. (Id. at 70). He states that his motions to terminate or modify probation were subsequently denied, and his motion to vacate his conviction was denied by the Circuit Court of Howard County on April 14, 2017. (Id. at 74–78).

## II.    DISCUSSION

### A.    Standard of Review

#### 1.    Initial Review

Sweitzer has paid the filing fee. Nonetheless, this Court has broad, inherent power to dismiss an action, or part of an action, which is frivolous, vexatious, or brought in bad faith. See, e.g., Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) (district courts have the authority to dismiss frivolous complaint sua sponte, notwithstanding the payment of the filing fee); Crowley Cutlery Co. v. United States, 849 F.2d 273, 277 (7th Cir. 1988) (federal district judge has authority to dismiss a frivolous suit on her own initiative).

#### 2.    Motion to Dismiss

Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and require "more than labels and conclusions," as "'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint. Id. at 561. Further, under Fed. R. Civ. P. 8(d)(1), each allegation in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Threadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Therefore, this Court has the discretion to dismiss a case at any time, notwithstanding the payment of the filing fee or any portion thereof, if it determines that the action is factually or legally frivolous.

**B.    Analysis**

   **1.    Motion to Recuse**

28 U.S.C. § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The judge's purported "bias or prejudice must, as a general matter, stem from 'a source outside the judicial proceeding at hand' in order to disqualify a judge." Belue v. Leventhal, 640 F.3d 567, 572 (4th Cir. 2011) (concluding that judge's opinions formed during the proceedings did not necessitate the judge's disqualification) (quoting Liteky v. United States, 510 U.S. 540, 545, 551 (1994)). Thus, a judge must recuse himself if an extrajudicial source provides a reasonable factual basis for calling the judge's impartiality into question. In re Beard, 811 F.2d 818, 827 (4th Cir. 1987). "The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." Id.; see Liteky, 510 U.S. at 548 ("[W]hat matters is not the reality of bias or prejudice but its appearance."). Conversely, if a judge's "familiarity with the facts of a case stem from [the judge's] judicial conduct in presiding over earlier

proceedings," the judge typically need not recuse himself or herself, even if the judge has formed an opinion about the case, In re Beard, 811 F.2d at 827, unless the judge's stated opinion "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." See Liteky, 510 U.S. at 551, 555; Belue, 640 F.3d at 572.

A judge also is required to disqualify himself if the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding" or if the judge is "likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(1), (5)(iv). As with § 455(a), the judge's knowledge referenced in § 455(b)(1) must "stem from a 'source outside the judicial proceeding at hand' in order to disqualify [the] judge." Belue, 640 F.3d at 572 (quoting Liteky, 510 U.S. at 545). Unlike § 455(a), § 455(b)(1) pertains to knowledge that is both actual and personal. See Liteky, 510 U.S. at 548.

In his Motion, Sweitzer alleges this Court exhibited bias in ordering him to amend his Complaint pursuant to Rule 8, and withholding issuance of summons pending consideration of the initial pleadings. Sweitzer argues that because the named Defendants are judicial and governmental employees, the Court's decision requiring Sweitzer to amend the Complaint amounts to "advocating for the defense, by postponing the issuance of process." (Mot. Recuse at 3) (emphasis omitted). This argument ignores this Court's broad, inherent power to dismiss an action, or part of an action, which is frivolous, vexatious, or brought in bad faith. See Fitzgerald, 221 F.3d at 363–64. In addition, Sweitzer provides no support for his belief that this Court harbors bias against him based on the nature of his claims, and thus, he provides no basis for recusal. Accordingly, the Court will deny the Motion.

10

## 2. Immunity

As a threshold matter, the Court concludes that Sweitzer's claims against many of the named Defendants cannot proceed for lack of subject matter jurisdiction under Rule 12(b)(1) because they are immune from suit in this court.

### i. Eleventh Amendment Immunity

With the exception of Howard County corrections and medical personnel, Sweitzer's criminal defense attorney, Clarke F. Ahlers, Esq., and Allan Tsai, Sweitzer's former client, the Defendants named by Sweitzer are state employees. State employees are immune under the Eleventh Amendment to the Constitution from suit in federal court for claims brought against them in their official capacity.[7] The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The Eleventh Amendment also bars claims brought against state employees in their official capacity because a suit against a state officer in this regard is tantamount to a suit against the state itself. E.g., Brandon v. Holt, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

---

[7] Sweitzer does not specify whether the claims are against Defendants in their official or personal capacities or both.

Thus, Sweitzer's claims for damages against the State of Maryland, the Department of the Maryland State Police, the Department of Public Safety and Correctional Services, the Attorney Grievance Commission of Maryland,[8] the Court of Special Appeals of Maryland,[9] the Trustees of the Client Protection Fund of the Bar of Maryland,[10] and the Circuit Court for Howard County[11] are barred by the Eleventh Amendment.[12] In addition, all named and unnamed State employees listed in the captions of the complaint and amended complaint are immune from suit in federal court from claims raised against them in their official capacities, and the claims against them in their official capacities will be dismissed.[13]

---

[8] Established in 1975, the Attorney Grievance Commission and Office of Bar Counsel consist of members appointed by the Court of Appeals of Maryland.

[9] The Court of Special Appeals is an intermediate court of appeal authorized by Art. IV, §§ 1, 14A of the Maryland Constitution. See Md. Code Ann., Cts & Jud. Pro. Art. § 1-401 (2013).

[10] The Client Protection Fund of the Bar and Maryland was created in 1965 by the Maryland legislature, which empowered the Court of Appeals of Maryland to provide by rule for the operation of the Fund to reimburse clients for losses caused by attorneys' misappropriation of client funds.

[11] Maryland's Circuit Courts have full common law and equity powers and jurisdiction in both civil and criminal cases arising in their respective counties. Their powers are conferred by the Maryland Constitution and by law. See Md. Code. Ann., Cts & Jud. Pro. Art. § 1-501 (2013).

[12] What is more, none of these Defendants is a "person" subject to suit under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70–71 (1989).

[13] Although they are entitled to dismissal on other grounds noted above, the "John Doe" Howard County Sheriff's Deputies also are immune from damages based on their transporting Sweitzer from Washington County to Howard County following his traffic stop. As a matter of Maryland law, county sheriffs and deputy sheriffs are officials and/or employees of the State, not the county. Rucker v. Harford County, 558 A.2d 399, 402 (Md. 1989). A deputy sheriff exercises the same authority as the sheriff and is likewise a State official/employee. Id. Further, because under Maryland law sheriffs and deputy sheriffs are not county employees, Howard County cannot be held liable for the alleged tortious conduct of Howard County Sheriff's Department employees.

### ii.    Judicial Immunity

Sweitzer seeks to sue every Maryland state trial and appellate judge who rendered decisions relating to his criminal trial and probation revocation proceedings, as well as in matters concerning his disbarment and victim restitution, in both the criminal case and Attorney Grievance matters.  Judges enjoy absolute immunity from liability in damages for their judicial or adjudicatory acts.  Forrester v. White, 484 U.S. 219, 225–26 (1988).  Thus, his claims against members of the Maryland judiciary, including Defendants Sweeney, Barbera, Greene, Hotten, McDonald, Watts, Adkins, Getty, Arthur, Eyler, Rodowsky, McCrone, Tucker, and Dwyer, are barred by judicial immunity.  Accordingly, the Court will dismiss Sweitzer's claims against these judges.

### iii.    Prosecutorial Immunity

Prosecuting attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial, as opposed to investigative or administrative functions.  See Imbler v. Pachtman, 424 U.S. 409 422–23 (1976).  Such immunity derives from absolute immunity, which is designed to protect judicial process; thus, the Court must inquire whether the prosecutor's actions are closely associated with judicial process.  See Burns v. Reed, 500 U.S. 478, 479 (1991) (citing Imbler, 424 U.S. at 423–23).

The decision as to "whether and when to prosecute" is "quasi-judicial." Thus, Sweitzer's criminal and traffic prosecutions confer absolute immunity to Defendants Washington County State's Attorney Strong and Washington County Assistant State's Attorney Jane Doe.  Likewise, appellate representation on behalf of the State confers prosecutorial immunity on Maryland Attorney General Frosh and Assistant Maryland

Attorney General Dietrick.  See Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996).

Accordingly, the Court will dismiss Sweitzer's claims against Strong, Doe, Frosh, and

Dietrick.

> **3.      Sweitzer's Claims for Relief**

Sweitzer brings his federal claims under 42 U.S.C. § 1983.  Under § 1983,

Sweitzer must demonstrate that: (1) he suffered a deprivation of rights secured by the

Constitution of the United States; and (2) the act or omission causing the deprivation was

committed by a person acting under color of law.  See West v. Atkins, 487 U.S. 42, 48

(1988).  At bottom, twenty-six of Sweitzer's twenty-seven claims for relief will be

dismissed.

> i.      Fourth Amendment Claim (Count I), False Arrest (Count XV), and
> False Imprisonment (Count XVI)

In his Amended Complaint, Sweitzer seeks to impose liability against Maryland

State Trooper Talbert and the Howard County police officers and/or sheriff's deputies

who participated in his arrest following a March 20, 2013 traffic stop in Washington

County, Maryland.   Sweitzer argues Talbert's assertion that Talbert saw Sweitzer

abruptly pull into a hotel parking lot was unreasonable under the Fourth Amendment.

That stop, which Sweitzer alleges was without probable cause, led to the discovery that

Sweitzer was driving without a valid license or registration and had been indicted for

theft.  As a result of the traffic stop, Talbert arrested Sweitzer in Washington County,

Maryland and he was later transported to Howard County authorities.  (Am. Compl. at

78).

Sweitzer's claims against the State Police officers and Howard County officers and/or sheriffs are two-fold. First, Sweitzer argues that Talbert and Sheriff Fitzgerald violated his Fourth Amendment rights because they had no right to detain and question him regarding the alleged traffic violation. Sweitzer contends that the traffic stop was illegal because Talbert claimed he made an "abrupt lane change," which is not a statutory offense. Sweitzer maintains that he instead should have been charged with making an "unsafe lane change," which is a statutory traffic offense under Maryland law. (Am. Compl. at 78–79). Sweitzer implies that Trooper John Doe (who transported him from Washington County to Howard County) and the Howard County Sheriff's Deputies and/or Howard County Police Officers John Doe #1 and #2, who accepted him for processing and detention, are to be held derivatively liable for civil rights violations because their actions followed Talbert's allegedly improper arrest.

In order to state a claim under § 1983 for false arrest, he must show that the arrest was made without probable cause. See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974). Probable cause exists if "at that moment the facts and circumstances with [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964) (citation omitted), and review of the action taken by law enforcement is governed by a totality of the circumstances test. See Illinois v. Gates, 462 U.S. 213, 241 (1983); United States v. Garcia, 848 F.2d 58, 59-60 (4th Cir. 1988). Whether probable cause to arrest exists is based on information the police had at the time of the arrest. Id. at 261. A warrantless

arrest in a public place may be made when the arresting officers have probable cause to believe that the suspect has committed, is committing, or is about to commit a crime. See Beck v. Ohio, 379 U.S. 89, 91 (1964) (probable cause exists if "at that moment the facts and circumstance within [the officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.").

Here, based on the facts Sweitzer pleads, the Court concludes that probable cause existed for Sweitzer's arrest. Sweitzer first states that Talbert did not have authority to arrest him because an "abrupt lane change" is not a statutory offense in Maryland. (Compl. ¶ 134). Sweitzer does acknowledge, however, that an "unsafe lane change" is a statutory offense. (Id.); see also Md. Code Ann., Transp. § 21-309 (West 2017). More importantly, Sweitzer only alleges that he "arrived safely at his destination, with no action to impede the movement of other traffic." (Id.). This is not sufficient to state a claim for false arrest because Sweitzer does not deny that he made an unsafe lane change; Talbert could still have had probable cause for arresting Sweitzer for this offense. In addition, the court cases Sweitzer relies on in his Complaint, (see Compl. ¶ 67), show that Talbert also arrested Sweitzer for driving on a suspended license and driving on a cancelled out-of-state license. See Case Nos. 1VY0BQC (Dist. Ct. Wash. Co) (cancelled out of state license), http://casesearch.courts.state.md.us/case search/inquiryDetail.jis? and IVX0BQC (suspended license) (Dist. Ct. Wash. Co), http://casesearch.courts.state.md.us/ casesearch/inquiryDetail.jis?. Sweitzer does not deny committing these violations in his Complaint, despite mentioning the cases.

Because Sweitzer alleges facts that would show probable cause existed to arrest him, his Fourth Amendment claim will be dismissed.[14]

ii.    Malicious Prosecution (Counts XVII and XVII)

Second, Sweitzer notes, and the state docket indicates, that a nolle prose was entered the day after Sweitzer completed his period of incarceration following his conviction on the theft charge. Based on Sweitzer's arguments, the Court discerns that he argues Talbert subjected him to malicious prosecution because the two traffic violations were later nolle prossed.[15] The resolution of the traffic charges by way of nolle prose does not support Sweitzer's claim of false arrest or malicious prosecution because it does not automatically provide evidence of lack of probable cause. See Fisher v. Matthews, 792 F.Supp.2d 745, 776 (M.D.Pa. 2011) (concluding that nolle prossed and withdrawn charges when plaintiff's case was before the county court does not necessarily show that defendants lacked probable cause to arrest and issue the criminal complaint against plaintiff). As observed above, Sweitzer does not deny making an unsafe lane change, driving on a suspended license, or driving on a cancelled out-of-state license. Based on Sweitzer's allegations, Talbert was justified in stopping Sweitzer and issuing him citations, and consequently, properly arrested Sweitzer for having an open warrant for

---

[14] Sweitzer's false arrest and false imprisonment claims will also be dismissed. In Maryland, an arresting officer's liability "will ordinarily depend upon whether or not the officer acted within his legal authority to arrest." Montgomery Ward v. Wilson, 339 Md. 701, 721 (1995). For the aforementioned reasons, Talbert and Fitzgerald acted within their authority to arrest and detain Sweitzer.

[15] Sweitzer also argues that Washington County State's Attorney Charles P. Strong and Assistant Washington County State's Attorney Jane Doe engaged in malicious prosecution for the same reasons. As the Court explained above, however, prosecutorial immunity bars his claims against Strong and Doe.

theft.  Because probable cause exists based on the facts Sweitzer alleges, Sweitzer's malicious prosecution claim will be dismissed.

### iii.    Due Process and Separation of Powers Claims

In Counts II and V, Sweitzer argues that Assistant Bar Counsel Marianne J. Lee had no authority to testify as a witness before a grand jury, and conspired with Senior Assistant State's Attorney Colleen McGuinn to obtain a criminal indictment on theft charges, violating the separation of powers between the prosecutor and the Office of Bar Counsel.[16]  In Count IX, Sweitzer claims McGuinn and Lee, together with Howard County State's Attorney Broccolino, Bar Counsel Grossman and Hein, Investigator Fiedler, Sweitzer's former client, Tsai, and State Appellate Judges Sweeney and Barbera, conspired to use a "void and illegitimate criminal conviction as an unconstitutional 'springboard' to impose suspension and revocation of his law license.  (Am. Compl. at 104-05).

These claims fail as a matter of law under Heck v. Humphrey, 512 U.S. 477 (1994).  There, the Supreme Court held that in order to recover damages for unlawful actions that "would render a conviction or sentence invalid," the district court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the complaint has already been invalidated."  Id.

---

[16] Sweitzer names "John or Jane Doe Grand Jurors 1-23" in the caption of his amended complaint.  Grand jury proceedings are secret, and Sweitzer provides no allegation of wrongdoing on the part of the grand jurors, other than the fact that they indicted him for theft.  As discussed infra, the indictment and subsequent conviction stand; thus, Sweitzer has no grounds to attack the action of the grand jury.

at 486–87.[17]  Sweitzer's conviction has been affirmed on appeal, and stands.  Thus, to the extent the Defendants named in this Count are not immune from liability, each is otherwise entitled to dismissal under Heck.

iv.    Claims Related to Sweitzer's Prosecution for Theft[18]

As previously noted, Sweitzer's theft conviction has been fully and finally adjudicated and further litigation of possible grounds of attack cannot be presented by way of a civil action under the holding of Heck.[19]

Sweitzer's claim under the Americans with Disabilities Act ("ADA") references correspondence between Lee and McGuinn that Sweitzer's claim of visual difficulty was an attempt at avoiding service of process.  ECF 5-1 at p. 32.  Title II of the ADA, prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," id. § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability."  Id. § 12132.  The Court concludes that the ADA

---

[17]  See also Edwards v. Balisok, 520 U.S. 641, 645 (1997) (Heck precludes claims that necessarily imply the invalidity of the judgment).

[18]  These claims are Counts III (Conspiracy to Deprive of Public Trial), IV (Entry of Judgment Without Notice), VI (Deprivation of Property Due to Incarceration), X (Failure to Record Grand Jury Proceedings in Violation of the Fifth Amendment), XI (Failure to Record Grand Jury Proceedings in Violation of the Sixth Amendment), XII (ADA claim), XX (Malicious Prosecution of Theft Charge), XXI (Tortious Interference with Contract), and Count XXII (Tortious Interference with Prospective Advantage).

[19]  For the forgoing reasons, the Court will also dismiss Sweitzer's claims under the Due Process Clause to the extent he also brings them under the Maryland Declaration of Rights.  The Maryland Declaration of Rights is in pari materia with the United States Constitution and its Amendments.  See Evans v. State, 914 A.2d 25, 67 (2006) (parallel provisions of the Maryland Declaration of Rights should not be "read more broadly (or narrowly)" than the Eighth and Fourteenth Amendments to the U.S. Constitution).

is inapplicable here because Sweitzer does not sufficiently allege how Lee or McGuinn discriminated against him. Their reference to his visual difficulty is not sufficient to state a claim under the ADA. Thus, the Court will dismiss Sweitzer's ADA claim.

Sweitzer also alleges a due process violation because after his conviction, the Clerk of Court for Howard County, Wayne A. Robey, failed to update an address, leading to a "meritless show cause order against [him] after counsel for the Client Protection Fund . . . [filed a] motion for contempt." (Am. Compl. at 11–12). The Court concludes that Sweitzer does not have standing to bring his due process claim against the Clerk of Court for Howard County. Standing requires that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). Here, Sweitzer does not sufficiently state that he suffered an injury because he states that the Clerk of Court for Howard County corrected the error and the show cause order was vacated. (Am. Compl. at 12). Thus, Sweitzer does not have standing to bring this due process claim.

v.     Inadequate Medical Care Claims[20]

Pretrial detainees and convicted prisoners are constitutionally entitled to adequate medical care while held by the State. The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided

---

[20] These claims are Counts VII (Denial of Medical Care During Pretrial Detention) VIII (Denial of Medical Care During Incarceration), and XXV (Medical Negligence for Both Pretrial Detention and Post-Conviction Incarceration).

to convicted prisoners by the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F. 2d 863, 870 (4th Cir. 1988)).  As a practical matter, the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's civil rights claim.  See Hill, 979 F.2d at 990–92.

In order for liability to exist under 42 U.S.C. § 1983, there must be personal involvement by the defendant in the alleged violation.  Vinnedge v. Gibbs, 550 F.2d 926. 928 (4th Cir. 1977); see also Rizzo v. Goode, 423 U.S. 362. 370–71 (1976).  Here, Sweitzer names Conmed HealthCare Management, Inc. ("Conmed"), Richard D. Turner, the Chief Executive Officer of Conmed, "John Doe 1 M.D." and "Chief Medical Officer" as Defendants responsible for his allegedly inadequate health care.  He also names Jack Cavanagh, the Director of the Howard County Detention Center and Howard County Executive Allen H. Kittleman.  Nowhere in the Complaint does Sweitzer allege that Turner or Kittleman had any personal knowledge of the health care provided during his detention and incarceration, or that either played any direct role in providing such care. Thus, these Defendants will be dismissed without prejudice for failure to state a claim.[21]

Additionally, Conmed is not amenable to suit under 42 U.S.C. §1983 because it is not a "person." See, e.g., Montgomery v. Conmed, 2016 WL 241738 n.6 (D.Md. January

---

[21] Similarly, Sweitzer lists "John or Jane Does 1-20, Correctional Officers" because they "were assigned correctional control" over him while he was housed at the Howard County Detention Center.  (Am. Compl. at 36).  No violation of constitutional rights is attributed to these unidentified individuals.  Thus, the Court will dismiss them as well.

19, 2016).  Sweitzer's claims against John Doe MD #1, and John Doe MD #2, however, may proceed.

Sweitzer's state claim of medical negligence cannot proceed because Sweitzer does not allege that he has complied with Maryland's Health Claims Arbitration Act, Md. Code Ann., Cts & Jud. Proc., §3-2A-02.  The Act requires, as a condition precedent to filing suit for "damages of more than the limit of the concurrent jurisdiction of the [state] district court," filing of a claim with the Director of the Healthcare Alternative Dispute Resolution Office.  Id., see also Md. Cts & Jud. Proc., Code Ann. §3-2A-04(a). Maryland's state district courts have exclusive original jurisdiction over "an action in contract or tort, if the debt or damages claimed to not exceed $30,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees."  Md. Cts & Jud. Proc., Code Ann. §4-401.  The instant Complaint seeks $500,000.00 in damages.  Thus, because Sweitzer's negligence claim does not assert compliance with the Act prior to filing this action, his claim of medical malpractice/medical negligence will be dismissed without prejudice.

vi.    RICO Claim (Count XIII)

A civil cause of action under 18 U.S.C. §1964(c) or "RICO" requires proof of four elements: "(1) conduct [causing injury to business or property], (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."  Sedima S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 496 (1995).  "The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity."  Rotella v. Wood, 528 U.S. 549, 557 (2000), quoting

<u>Klehr v. A.O. Smith, Corp.</u>, 521 U.S. 179,187 (1984). Racketeering activity includes any of the enumerated offenses found in 18 U.S.C. §1961(1). Because neither an enumerated offense nor the elements of a RICO claim is identified by Sweitzer, the Court will dismiss his RICO claim.

    vii. <u>Negligent Hiring, Retention or Supervision Claim (Count XXIV)</u>

   Sweitzer seeks damages from Defendant Moyer, Secretary of the Department of Public Safety and Correctional Services (DPSCS). Defendant Frankenberry, a DPSCS employee, initiated a violation of probation proceeding against him on July 15, 2015, for failure to pay money to the Client Protection Fund of the Bar of Maryland, even though the Fund was already attempting to collect the money through a separate civil action. (Am. Compl. ¶ 292). DPSCS eventually dismissed the violation of probation charge. (Am. Compl. ¶ 293). Sweitzer asserts that Moyer negligently supervised Frankenberry, resulting in Frankenberry initiating violation of probation proceedings. (<u>Id.</u> ¶¶ 291–92). Sweitzer does not impute any personal knowledge to Defendant Moyer in his allegations, however. Thus, the Court will dismiss Sweitzer's claims against Moyer.

    viii. <u>Legal Malpractice Claim (Count XXVI) and Defamation Claim (Count XXVII)</u>

   Attorney Clarke F. Ahlers represented Sweitzer his criminal trial. Privately retained attorneys do not act under color of state law. <u>See Deas v. Potts</u>, 547 F.2d 800, 800 (4th Cir. 1976). While an attorney who conspires with a state official to violate constitutional rights does act under color of state law, a plaintiff must sufficiently state a claim of conspiracy. <u>See Tower v. Glover</u>, 467 U.S. 914, 920 (1984); <u>Phillips v.</u>

23

Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (plaintiff must make more than naked assertion of conspiracy). Sweitzer fails to do so. Thus, the Court will dismiss Sweitzer's claim against Ahlers to the extent Sweitzer brings the claim under § 1983.

To the extent Sweitzer brings the claim under Maryland law, Maryland's three-year statute of limitations period bars it. See Md. Code Ann., Cts. & Jud. Proc., § 5-101 (2013 Repl. Vol.). Sweitzer's representation by criminal counsel Clarke Ahlers ended on May 29, 2014, when the Howard County Circuit Court granted Ahlers' request to strike appearance in Case No. 13-K-13053059. The instant claim for legal malpractice against Ahlers was filed more than three years later, on June 26, 2017. Because the claim is time-barred, the Court will dismiss the claim.

Sweitzer also brings a defamation claim against Defendants Grossman, Broccolino, McGuinn, Tsai, McCrone, Tucker, Dwyer, Lee, Hein and others. Defamation does not state a cognizable claim of constitutional dimension under the Civil Rights Act. See Paul v. Davis, 424 U.S. 693, 712 (1976). Thus, the Court will dismiss Sweitzer's defamation claim to the extent he brings the claim under § 1983.

To the extent Sweitzer brings a defamation claim under Maryland law, Maryland's one-year statute of limitations period bars it. See Md. Code Ann., Cts. & Jud. Proc. § 5-105 (2013 Repl. Vol.). He pleads that those Defendants involved in attorney grievance matters "continue to falsely represent that [his] October 7, 2013 conviction and subsequent imposition of judgment on April 28, 2014, is valid," despite their "failure to oppose [his] subject matter jurisdiction challenge [to the conviction] or his representation that the judgment is void." (Am. Compl. at 73). But as the Court explained above,

Sweitzer's conviction remains valid. As a result, reliance upon it does not constitute defamation. Accordingly, the Court will summarily dismiss the defamation claim.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Sweitzer's Motion to Recuse (ECF No. 7). In addition, the Court will dismiss all Defendants with the exception of John Doe #1 M.D., Chief Medical Officer, and John Doe #2 M.D., and the Court will dismiss all counts with the exception of Counts VII and VIII. A separate Order follows.

Entered this 10th day of October, 2017.

_____/s/_____
George L. Russell, III
United States District Judge