IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 FEB -6  AM 9: 37

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

_____..............oooOooo...

Philip J. Sweitzer,                    :
P.O. Box # 4464                        :
Gettysburg, PA 17325                   :

    *Plaintiff,*                        :

                                   :

v.                                     :
                                       :
Colleen McGuinn, Esq.,                 :
    Senior Assistant State's Attorney  :
    and                                :
Dario J. Broccolino, Esq., and/or      :
Rich Gibson, Esq.,                     :
    State's Attorney, Howard County    :   Case Number 17SAG 1741
Carroll Building, Second Floor         :
3450 Courthouse Drive                  :
Ellicott City, MD 21043                :
                                       :
State of Maryland,                     :
Nancy K. Kopp, Treasurer               :
Louis Goldstein Building               :
80 Calvert Street                      :
Annapolis, MD 21401                    :
                                       :
John or Jane Doe Grand Jurors 1-23     :
The Circuit Court for Howard County    :
8360 Court Avenue                      :
Ellicott City, MD 21034                :
                                       :
Department of Maryland State Police,   :
1201 Reisterstown Road                 :
Pikesville, MD 21208                   :
                                       :
TFC William Talbert,                   :
Department of Maryland State Police    :

Barrack "O"                                          :
18345 Colonel Henry K. Douglas Dr.                   :
Hagerstown, MD 21740                                 :
                                                     :
TFC John Doe,                                        :
Department of Maryland State Police                  :
Barrack "B"                                          :
110 Airport Drive East                               :
Frederick, MD 21701                                  :
                                                     :
John Doe Howard County Police Officer :
or    John Doe Sheriff's Deputy 1,                   :
      and                                            :
John Doe Howard County Police Officer,:
Or John Doe Sheriff's Deputy 2,                      :
      3410 Courthouse Drive                          :
or    8360 Court Avenue                              :
      Ellicott City, MD 21043                        :
                                                     :
Charles P. Strong, Esq.,                             :
      State's Attorney, Washington Cty. :
      and                                            :
Jane Doe, Esq.,                                      :
      Assistant State's Attorney                     :
33 West Washington Street, Room 302                  :
Hagerstown, MD 21740                                 :
                                                     :
Attorney Grievance Commission                        :
            of Maryland,                             :
      and                                            :
Glenn M. Grossman, Esq.,                             :
      and Lydia E. Lawless, Esq.                     :
      Bar Counsel                                    :
      and                                            :
Raymond Hein, Esq.                                   :
      Deputy Bar Counsel                             :
      And                                            :
Marianne J. Lee, Esq.,                               :

2

Senior Assistant Bar Counsel :
and :
Marc Fiedler, Investigator :
200 Harry S. Truman Parkway :
Suite 300 :
Annapolis, MD 21401 :
 :
Brian E. Frosh, Esq. :
  Attorney General :
 and :
Ryan Dietrich, Esq., :
  Assistant Attorney General :
Office of the Attorney General :
200 St. Paul Place :
Baltimore, MD 21201 :
 :
The Honorable Dennis M. Sweeney, :
The Circuit Court for Howard County :
8360 Court Avenue :
Ellicott City, MD 21043 :
 :
The Court of Special Appeals of Maryland,:
 and Gregory Hilton, Clerk, :
361 Rowe Blvd. :
Annapolis, MD 21401 :
 :
The Court of Appeals of Maryland, :
 and, Hon. Mary Ellen Barbera,   :
  Chief Judge :
  and, Hon. Clayton Greene, Jr., :
  and, Hon. Sally D. Adkins, :
  and, Hon. Michelle Hotten, :
  and, Hon. Robert N. McDonald, :
  and, Hon. Shirley M. Watts, :
  and, Hon. Joseph M. Getty, :
   Judges
361 Rowe Blvd. :
Annapolis, MD 21401 :

3

:

The Honorable Kevin F. Arthur,                    :
Courthouse East                                    :
111 North Calvert Street                           :
Baltimore, MD 21202                                :

                                                   :
The Trustees of the Client Protection Fund
        of the Bar of Maryland,                    :
        and,                                        :
Janet C. Moss, Executive Director                  :
        and,                                        :
Leo Wesley Ottey, Jr., Esq.                        :
200 Harry S. Truman Parkway                        :
Annapolis, MD 21401                                :

                                                   :
James F. Fitzgerald, Sheriff, Howard Cty.:
        and                                        :
John Doe, Deputy Sheriff                           :
        and                                        :
Jane Doe, Deputy Sheriff                           :
8360 Court Avenue                                  :
Ellicott City, MD 21043                            :

                                                   ::
The Circuit Court for Howard County,   :
        and                                        :
Wayne A. Robey, Clerk                              :
8360 Court Avenue                                  :
Ellicott City, MD 21043                            :

                                                   :
Department of Public Safety and        :
        Correctional Services,                     :
        and                                        :
Steven T. Moyer, Secretary                         :
300 East Joppa Road                                :
Towson, MD 21286                                   :
        and,                                        :
Jennifer Frankenberry,                             :

4

Division of Parole and Probation    :
100 West Franklin Street    :
Hagerstown, MD 21740    :

    :

The Honorable Timothy J. McCrone    :
The Circuit Court for Howard County    :
8360 Court Avenue    :
Ellicott City, MD 21043    :

    :

The Honorable William V. Tucker    :
The Circuit Court for Howard County    :
8360 Court Avenue    :
Ellicott City, MD 21043    :

    :

The Honorable Daniel P. Dwyer    :
The Circuit Court for Washington County:
95 West Washington Street    :
Hagerstown, MD 21740    :

    Serve:    :
    Office of the Attorney General    :
    Julia Doyle Bernhardt, Esq., Chief  :
    Civil Litigation Division    :
    St. Paul Plaza, 200 St. Paul Place :
    Baltimore, MD 21202    :

    :

Howard County, Maryland    :
    Allan H. Kittleman,    :
    County Executive    :
George Howard Building    :
3430 Courthouse Drive    :
Ellicott City, MD 21043    :

    :

Howard County Dept. of Corrections  :
Jack Kavanagh, Director    :
    and,
John or Jane Does 1-20 Correctional Offs.:
Howard County Detention Center    :

5

7301 Waterloo Road     :
Jessup, MD 20794      :

         :

    Serve:     :

         :

  Margaret Ann Nolan, Esq. :
  County Solicitor    :
  George Howard Building  :
  3450 Courthouse Drive   :
  Ellicott City, MD 21043   :

         :

Jorge Dominicis,      :
  Chief Executive Officer   :
ConMed Healthcare Mgmt., Inc.  :
 n/k/a WellPath, LLC     :
1283 Murfreesboro Pike, Suite 500 :
Nashville, TN 37217     :

         :

  and        :
   Yves-Jacques Piquion, M.D. :
  9901 Ashburton Lane   :
  Bethesda, MD 20817    :

  and, John D. Morgan, M.D.  :
  58 Stanford Lane     :
  Falling Waters, WV 25419   :

         :

  and, Oscar H. Jerkins, M.D.,  :
  2016 Mars Run Road    :
  Essex, MD 21221     :

         :

  and Nurse Jane Doe (Alban?)  :
  Howard County Detention Ctr.  :

         :

         :

Allan Tsai, D.D.S.      :
and         :
Kate Tsai        :

4942 Reedy Brook Lane          :
Columbia, MD 21044             :
                              :
Clarke F. Ahlers, Esq.         :
111 Atholton Square            :
Columbia, MD 21044             :
                              :
Hon. George Levi Russell,      :
      District Judge           :
Hon. Stephanie A. Gallagher,   :
      District Judge           :
United States District Court,  :
101 W. Lombard Street          :
Baltimore, MD 21201            :
_____ *Defendants.* ................oooOooo...

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, Philip J. Sweitzer, *pro se*, who amends his First Amended Complaint, pursuant Fed. R. Civ. P. 15, and hereby sues the Defendants, the State of Maryland, and its agents / agencies, Colleen E. McGuinn, Esq., Senior Assistant State's Attorney; Dario J. Broccolini, Esq., , and/or Ric Gibson, the State's Attorney for Howard County; John or Jane Doe Grand Jurors 1-23; the State's Attorney for Washington County, Charles P. Strong, Esq.; Jane Doe, Assistant State's Attorney; the Honorable Dennis M. Sweeney; the Honorable Kevin F. Arthur; The Honorable Timothy J. McCrone; the Honorable William V. Tucker; the Honorable Daniel P. Dwyer; the Department of Maryland State Police TFC William Talbert; The Attorney Grievance Commission of Maryland; Glenn M. Grossman, Bar Counsel; Raymond Hein, Esq., Deputy Bar Counsel; and Marianne J.

7

Lee, Esq., Senior Assistant Bar Counsel; Marc Fiedler, Investigator; The Honorable Mary Ellen Barbera, Chief Judge of the Court of Appeals of Maryland; , Hon. Clayton Greene, Jr., and, Hon. Sally D. Adkins; and, Hon. Michelle Hotten; and, Hon. Robert N. McDonald; Hon. and, Shirley M. Watts; and, Hon. Joseph M. Getty, Judges of the Court of Appeals of Maryland; The Department of Public Safety and Correctional Services, and its Parole and Probation Agent, Jennifer Frankenberry; James F. Fitzgerald, The Sheriff for Howard County; Brian E. Frosh, Esq., Attorney General, and Ryan Dietrich, Esq., Assistant Attorney General; and, Jane Doe and John Doe, Deputy Sheriffs for Howard County; and Howard County, Maryland and its agencies and agents, the Howard County Detention Center and Jack Kavanagh, Director; and its contracted medical services provider, Con Med Healthcare Management, Inc.; various John and Jane Doe (Alban) practitioners; private Complainant in the underlying criminal matter and disciplinary complaint Allan Tsai, D.D.S., and his spouse, Kate Tsai; and Clarke F. Ahlers, Esq., ; and the Honorable Goerge Russell Levi and Honorable Stephanie A. Gallagher; for injuries suffered at their hands, and who, in support of said Complaint states as follows:

## JURISDICTIONAL STATEMENT

1.      This is an action for violation of civil rights brought pursuant to 42 U.S.C. §§ 1983 and 1985 alleging unconstitutional deprivation.   As such, this Court is vested with subject matter

jurisdiction pursuant to 28 U.S.C. § 1331 (2014) (federal question). This Court is also vested with supplemental jurisdiction over the related and derivative state law claims pursuant to 28 U.S.C. § 1367 (2014). Venue sited in the District of Maryland is proper.

## PRELIMINARY STATEMENT

2.    Criminal Defendants in the United States enjoy a constitutional right to a fair and impartial trial, one which is untainted by bias and where the separation of powers of the State to prosecute and adjudicate crimes remain separate and distinct, rather than concentrated. Such an impartial trial, however, is impossible where the interests of the Judiciary and the Executive merge, that is, where the Judiciary is actually – as here - *part of the prosecution*, having an interest in the outcome of the case. *In re Murchison:* 349 US. 133 75 S. Ct. 623, 99 L. Ed. 2d 942 (1955). In the instant complaint, Plaintiff alleges that the Judiciary and Executive acted not only to align their respective interests, but did so in a deceptive and malicious way specifically to subvert and deny him due process of law to unconstitutionally procure his unlawful conviction and subsequent disbarment, causing the loss of his livelihood, a

livelihood he had worked very hard for several years to advance; that the Assistant State's Attorney conspired with and enlisted Assistant Bar Counsel to appear as a disqualified witness before a grand jury, as an interested member of the Judiciary, specifically to "rig" the entire proceeding by bringing the Judiciary inside the prosecution, where Assistant Bar Counsel had no statutory standing or authority to act; that, thereafter, the two of them, aware of the constitutional impropriety of their collective action, suppressed recordation of the grand jury transcript entirely; that, subsequently, they kept their unconstitutional conspiracy and alignment of the Judiciary and Executive – an exculpatory fact – an undisclosed secret for over three years; which secret-keeping and lack of disclosure continues to the date of the instant filing.

4.    The right to a fair and impartial public trial under the Sixth Amendment – one in which the actions of the court are not aligned with those of the prosecution and which are deducible from being conducted in a public-witnessed proceeding, and from a printed trial record susceptible to transcription from recordation of some sort, whether stenographic or electronic – is fundamental in the

United States and, particularly in the State of Maryland. Off-the-record backroom deals, to accomplish the State's criminal sentencing and attorney disciplinary business in one fell swoop, whether or not the particular court(s) in question even has/have subject matter jurisdiction over the controversy, are not permitted.

5.     The right to confront witnesses at trial with contradictory and inconsistent impeachment testimony adduced before the grand jury, and to deduce whether subject matter jurisdiction may have been destroyed in the grand jury proceeding prior to the issuance of any indictment, as reflected in the transcript of that proceeding, is a right guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States. *Dennis v United States*, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed.2d 973 (1966). As already alleged, the grand jury proceeding was either not recorded for transcription, or the transcripts were destroyed. Plaintiff has reason to believe this failure of recordation was intentional, suppressed specifically to conceal the presence of Assistant Bar Counsel, a member of the judiciary, as a criminal accuser/witness before the grand jury, which would

11

demonstrate alignment of the Judiciary with the interests of the Executive and destruction of subject matter jurisdiction.

6.    In the State of Maryland, moreover, a failure of recordation of the trial proceedings is itself considered "prejudicial error," where it calls into question, in any way, the outcome of those proceedings, requiring reversal or *vacatur*. *Wilson v. State*, 334 Md. 469, 639 A.2d 696 (1994)(incomplete record relevant to appeal, showing *any prejudicial effect* is basis for *vacatur*.)  As will be shown, *infra*, the gap in the recordation of these proceedings, at a minimum, rendered the imposed sentence illegal.    As such, it was unquestionably "prejudicial."

7.    Separation of powers of the respective branches of government is also a bedrock constitutional principle. *INS v. Chadha*, 462 U.S. 919, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983).  Within the State of Maryland, the strict separation of powers and the proscription against concentration of government power under Article VIII of the Maryland Declaration of Rights, appears even more strictly construed than the federal right. *State v. Lykins*, 43 Md. App. 472, 473, 406 A.2d 289(1979) *modified*, 288 Md. 71, 415 A.2d 1113 (1980).

8.    In the instant lawsuit, Plaintiff alleges that the State of Maryland, through several state agents/agencies, effectively colluded, misused, and abused the process of criminal prosecution, for the purpose of procuring civil advantage in a subsequent disciplinary proceeding brought against him by the Attorney Grievance Commission of Maryland, and its agents. They achieved this result specifically by colluding with the Executive Branch of Maryland State Government, who exercised jurisdictional authority beyond their subject matter purview by "blending" proceedings where the Court of Appeals, in which original and complete jurisdiction for attorney disciplinary proceedings is vested, had not yet acted in any way; and, they subsequently misused the Department of Public Safety and Correctional Services and its agents as the punitive collection agent for the Client Protection Fund of the Bar of Maryland, an agency of the judicial branch, in addition to misusing contempt and disciplinary proceedings as means to collect an unlawful "debt," part of criminal sentence, in which the Judiciary may have no interest whatsoever.

9.   The State and local county correctional authorities, further, exhibiting deliberate indifference to the Plaintiff's medical needs while abusively detained and incarcerated, also failed to administer very simple medical treatment - blood culture and serum glucose testing - to detect the causes for a persistent, infected foot wound, and summarily failed to detect and treat the Plaintiff's diabetes mellitus. The result of that deliberate indifference was the Plaintiff's hospitalization for diabetic ketoacidosis/hyperglycemia in September, 2014, and over five (5) years of antibiotic, wound care and diabetes therapy to resolve the persistent infections to avoid partial amputation.

10.   In the course of this action, the State also committed other actionable state law torts, bringing at least two incarcerable traffic and four contempt actions against the Plaintiff, actions that terminated in his favor in May, 2014; January, 2015; July, 2016 and August, 2016.

11.   This case, thus, raises important questions of abuse of power – specifically, whether blending a criminal investigation and prosecution with attorney disciplinary matters is ever permissible,

14

under several theories. Courts in other jurisdictions have already ruled that it is not. *Lucas v. 1 on 1 Title Agency, et al.*, No. A-2217-16T2 (N.J. Super., August 9, 2019) at 1., (malpractice judgment blending malpractice action with attorney/client fee dispute a *nullity*.)

## PARTIES

12.    The Plaintiff, Philip J. Sweitzer, is currently staying in with family and/or friends for a period until he occupies a planned new build in Gettysburg planned sometime in early to mid-November. His current address of record is 2689 Skelp Mountain Road, in Altoona, PA 16601, but he continues to receive mail at his Gettysburg, PA post office box, # 4464, 17325.  Plaintiff, a former member of the Maryland Bar, who was admitted to practice in December, 2005, was disbarred on November 4, 2016, in response to his conviction on a single count of theft greater than ten thousand dollars ($10,000.00), in violation of Md. Criminal Law § 7-104, a criminal conviction the Attorney Grievance Commission of Maryland artificially manufactured by unlawfully manipulating a criminal proceeding to procure disciplinary effect. Owing to the facts stated, *infra*, however, his license to practice law in the State of Maryland is

15

currently unlawfully revoked.    He seeks compensatory and injunctive relief, as well as eventual reinstatement: reinstatement is not the purpose of this action, however.    His conviction on a single count of theft was affirmed by the Court of Special Appeals of Maryland on May 26, 2015, which issued its mandate on July 20, 2015.    That affirmance was pending further review, with an extension of time to file a petition for a writ of *certiorari* granted by the Chief Justice of the United States, but for the reasons, stated, *infra*, owing to the State's apparent abandonment of the cause and failure to contest a subject matter jurisdiction challenge in post-trial motions, it appeared that further appellate review was not required.

13.    The State of Maryland is a territorial jurisdiction in the mid-Atlantic region of the United States bordered by Pennsylvania on the north; Virginia on the south; Delaware and the Atlantic Ocean on the east, and West Virginia on the west.    It is one of the fifty (50) United States of America.    Nancy Kopp is the Treasurer of the State of Maryland, with offices at 80 Calvert Street, in the Goldstein Building, in Annapolis, MD 21401.    Other than for claims arising under 42 U.S.C. §§ 1983 and 1985 asserted herein, liability for the

tortious acts of its agents, employees, and their subordinates flows to the State vicariously through the doctrine of *respondeat superior*. The Plaintiff gave the State of Maryland timely notice of this action, pursuant to the Maryland Tort Claims Act, Md. Code Ann. State Gov't. §§ 12-101 *et seq.* (2014), by way of a Notice of Claim addressed to Ms. Kopp on or about July 28, 2014, receipt of which was confirmed by Investigator David Zehner. The State has assigned claim number 01MD13TG1538 to the case. Because the state law claims are being litigated in this action, Plaintiff was not required to comply with the terms of the Maryland Tort Claims Act, which applies exclusively to actions brought in the "courts of the State."

14.    Colleen E. McGuinn, Esq., is a Senior Assistant State's Attorney working under the supervision and control of Dario Broccolino, Esq., and Rich Gibson within the Office of the State's Attorney for Howard County, Maryland. Her office is located at 3450 Courthouse Drive, Second Floor, in Ellicott City, MD 21043. Ms. McGuinn is sued in her official and personal capacity. At all relevant times alleged in the Complaint, Ms. McGuinn acted under color of law. She is not immune from suit under the doctrine of prosecutorial

17

immunity, because the constitutionally offensive conduct alleged, namely collusion with another branch of Maryland state government for the purpose of seeding a grand jury proceeding with testimony from a member of the judiciary to deny Plaintiff due process of law, is deemed to be investigatory in character under the relevant decisional authority; moreover, since the presence of Assistant Bar Counsel is presumed to have introduced subject matter beyond the jurisdictional purview of the tribunal, which fact has never been contested, she would enjoy no immunity where subject matter jurisdiction has been destroyed, in any event.

15.    Dario J. Broccolino, Esq., was the State's Attorney for Howard County, Maryland.    Mr. Broccolino is or was Ms. McGuinn's supervisor at the time of the alleged constitutional offenses. The State's Attorney is an Executive agency of Maryland state government, constitutionally chartered along with the Attorney General and various police agencies, with the investigation and prosecution of criminal offenses. Rich Gibson, Esq., is the current State's Attorney for Howard County.  Mr. Broccolino and Mr. Gibson are sued in their official and personal capacity(ies), and are not

immune under theories of prosecutorial immunity for the same reasons as those stated, *supra*. At all relevant times alleged in the Complaint, Mr. Broccolino and Mr. Gibson acted under color of law.

16.    The Department of Maryland State Police is an executive agency of the State of Maryland, describing itself as a "paramilitary" organization, charged with various law enforcement responsibilities within the territorial jurisdiction of the State of Maryland.    Its principal headquarters is located at 1201 Reisterstown Road in Pikesville, MD 21208.   Other than for claims arising under 42 U.S.C. §§ 1983 and 1985 asserted herein, liability for the tortious acts of its agents, employees, and their subordinates flows to the State vicariously through the doctrine of *respondeat superior*. One of the responsibilities of the Department of State Police, among others, is patrolling highways within the State of Maryland to monitor compliance on the part of motorists with statutory requirements of the Maryland Transportation Code (Article).

17.    William Talbert is a Maryland State Trooper, classified as a Trooper First Class at the time of the events alleged in the instant complaint.   Trooper Talbert, at all relevant times, was assigned to the

Hagerstown Barracks located at 18345 Colonel Henry K. Douglas Drive, Hagerstown, MD 21740. Trooper Talbert (hereinafter, "TFC Talbert") is sued in his official and personal capacities. At all relevant times alleged in the Complaint, Trooper Talbert acted under color of law.

18.    Trooper "John Doe" is a Maryland State Trooper, whose classification is unknown at the time of filing the instant complaint, based upon the events alleged in the instant complaint. Upon information and belief, it is alleged that Trooper "John Doe," at all relevant times, was assigned to the Barracks B/Frederick located at 110 Airport Drive East, Frederick, MD 21701. Trooper "John Doe" is sued in his official and personal capacities. At all relevant times alleged in the Complaint, Trooper "John Doe" acted under color of law.

19.    Howard County Police Officer or, alternatively, Sheriff's Deputy "John Doe 1" is either a Howard County Police Officer or a Howard County Sheriff's Deputy, whose classification is unknown at the time of filing the instant complaint, based upon the events alleged in the instant complaint. Police Officer or Sheriff's Deputy "John Doe

1" is sued in his official and personal capacity. At all relevant times alleged in the Complaint, Howard County Police Officer, or Sheriff's Deputy "John Doe" 1 acted under color of law.

20. Howard County Police Officer or, alternatively, Sheriff's Deputy "John Doe 2" is either a Howard County Police Officer or a Howard County Sheriff's Deputy, whose classification is unknown at the time of filing the instant complaint, based upon the events alleged in the instant complaint. Police Officer or Sheriff's Deputy "John Doe 2" is sued in his official and personal capacity. At all relevant times alleged in the Complaint, Howard County Police Officer, or Sheriff's Deputy "John Doe" 1 acted under color of law.

21. John/Jane Doe Grand Jurors 1-23 are the members of the grand jury in the underlying criminal matter complained of, styled as *State of Maryland v. Philip James Sweitzer*, No. 13-K-13-053059, in the Circuit Court for Howard County, Maryland, located at 8360 Court Avenue, Ellicott City, Maryland. The grand jury apparently refused to return an indictment against the Plaintiff, as there is no true bill in the record bearing the foreperson's signature, which fact has been admitted by Bar Counsel in the related disciplinary matter, noted,

*infra*. The Court, on the State's Attorney's signature, issued an indictment anyway, along with a sealed arrest warrant as alleged, *supra*. The circuit court, however, did not have subject matter jurisdiction over attorney disciplinary matters, as alleged *supra*, and transcription of the proceedings was suppressed.

22. The Attorney Grievance Commission (hereinafter, "AGC") is an independent agency of the State of Maryland, part of the judicial branch of government, which describes its mission as the oversight of Maryland lawyers and nonmembers of the Maryland Bar who engage in the practice of law in the State. The Attorney Grievance Commission is located at 200 Harry S. Truman Parkway, Suite 300, in Annapolis, MD 21401. In addition, the Attorney Grievance Commission, and the State of Maryland, bears vicarious responsibility for the tortious acts of its employee(s), where those tortious acts are not limited to constitutional torts. The Attorney Grievance Commission is also a professional licensing agency within the meaning of Title II of the Americans with Disabilities Act. As an agency of the Judiciary, it has no constitutional or statutory over

matters of criminal investigation and prosecution, which authority belongs solely to the Executive.

23. Glenn M. Grossman, Esq., was Bar Counsel at relevant times, thus chiefly responsible for the operation of Office of Bar Counsel, and the supervision of Deputy and Assistant Bar Counsel, which prosecutes complaints of misconduct against Maryland attorneys and nonmember attorneys practicing in Maryland. Lydia E. Lawless, Esq., currently serves as Bar Counsel. Her principal office is located in the same location as the Attorney Grievance Commission, at 200 Harry S. Truman Parkway, Suite 300, in Annapolis, MD 21401. Mr. Grossman and Ms. Lawless are both sued in their official and personal capacity as the misconduct alleged of his agency is investigative in character; therefore, under the test this Court recently enunciated in *Pak v. Ridgell et al.*, No 10-01421RDB (D. Md., filed August 11, 2011), none of Mr. Grossman, Ms. Lawless, Ms. Lee, Mr. Hein or Mr. Fiedler identified *infra*, or the Attorney Grievance Commission, identified, *supra*, is shielded by prosecutorial immunity. Mr. Grossman, and Ms. Lawless, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

24.    Marianne J. Lee, Esq., is Sr. Assistant Bar Counsel within the Office of Bar Counsel, reporting directly to Mr. Grossman/Ms. Lawless.  She, therefore, shares his same physical location at 200 Harry S. Truman Pkwy., Suite 300, in Annapolis, MD 21401.  Ms. Lee was the attorney of record in a disciplinary complaint brought by the Attorney Grievance Commission of Maryland against the Plaintiff, Mr. Sweitzer, which is styled as *Attorney Grievance Comm'n v. Sweitzer*, No. 11, September Term, 2014, In the Court of Appeals of Maryland.  Ms. Lee was integrally and impermissibly involved in the criminal investigation and prosecution of Plaintiff, as alleged, *supra* and *infra*. Ms. Lee is sued in her personal and official capacities and at all relevant times acted under color of law.

25.    In May, 2016, Defendant, Deputy Bar Counsel Raymond Hein entered his appearance in the said disciplinary matter, substituting for Ms. Lee, who removed herself owing to self-admitted conflict.  Mr. Hein's office address is the same as Ms. Lee's, *supra*. Mr. Hein is sued in his official and personal capacities.  Marc Fiedler is an investigator for the AGC, who operated in concert with Ms. Lee, located at the same address.  For the reasons articulated in ¶ 23,

*supra*, neither Mr. Hein, nor Mr. Fiedler are immune. Mr. Hein and Mr. Fiedler, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

26. The Honorable Dennis M. Sweeney is a retired circuit court judge who functioned as the trial judge at the trial of *State of Maryland v. Phillip (sic) J. Sweitzer,* No. 13-K-13-053059 in the Circuit Court for Howard County, Maryland on October 7, 2013. Because Judge Sweeney attempted to impose attorney discipline – resignation from the Bar – as a part of a post-verdict prospective sentencing "deal" conveyed to trial counsel in a half hour off-record chambers conference and summarized at the bench at the close of trial on the record described, *infra*, and because he exceeded the circuit court's subject matter jurisdiction, he is sued in his personal and official capacity. The Plaintiff understands that he serves at various locations as a retired judge, but his service on the date in question occurred at the Circuit Court for Howard County, located at 8360 Court Avenue, Ellicott City, MD 21043, which was conducting trials temporarily in the nearby District Court of Maryland facility. For actions taken and subject matter considered beyond his subject matter authority ]he is

not immune from suit. Judge Sweeney, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

27.    The Honorable Kevin F. Arthur is a judge currently sitting on the Court of Special Appeals of Maryland, representing the City of Baltimore, with his office located at Courthouse East, 111 N. Calvert Street, Baltimore, MD 21202. Judge Arthur was the judge assigned to write the order and opinion in *Philip J. Sweitzer, Appellant v. State of Maryland, Appellee*, No. 582, September Term, 2014, In the Court of Special Appeals of Maryland. Judge Arthur affirmed the judgment of the trial court, specifically holding that there was "no evidence" of blending of disciplinary matters with and into the underlying criminal matter: the evidence of such blending, however was intentionally suppressed, as the Assistant State's Attorney has specifically admitted. Inasmuch as Judge Arthur neither has nor had subject matter jurisdiction over attorney disciplinary matters, he is also sued in his personal and official capacity. He also does not enjoy absolute judicial immunity, where his lack of jurisdiction over the subject matter is the heart of the matter at issue in the instant suit.

Judge Arthur, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

28.    The Honorable Timothy J. McCrone is an Associate Judge sitting in the Circuit Court for Howard County, Maryland, located at 8360 Court Avenue, Ellicott City, MD 21043. Judge McCrone entered a judgment against the Plaintiff in the matter of *Allan (sic) Tsai v. Phillip (sic) J. Sweitzer*, No. 13-C-55-076156, In the Circuit Court for Howard County, Maryland, a judgment deriving from an illegal criminal sentence in which underlying matter subject matter jurisdiction was destroyed; for which there was no fact-finding by the trial judge to support the amount of a restitution order entered; and, of which there was no process, no service of process, *vacatur* of which he denied without hearing. He subsequently denied the Plaintiff's Motion to Vacate an ostensibly void judgment of conviction, over no opposition by the State of Maryland, without hearing.    Judge McCrone subsequently recused himself in the substantive criminal action, on or about March 8, 2016.  Judge McCrone is sued in his official and personal capacities. Judge McCrone, at all relevant times

in the facts set forth in the instant complaint, acted under color of law.

29.    The Honorable William V. Tucker is an Associate Judge sitting in the Circuit Court for Howard County, Maryland, located at 8360 Court Avenue, Ellicott City, MD 21043. Judge Tucker entered a show cause order against the Plaintiff in the matter of *Allan (sic) Tsai v. Phillip (sic) J. Sweitzer*, No. 13-C-55-076156, In the Circuit Court for Howard County, Maryland, on the civil assignee, The Client Protection Fund of Maryland's, Motion for Contempt. The civil judgment arose out of an illegal sentence in the underlying criminal matter, which – as stated, *supra* – was illegal on two separate bases. On July 1, 2016, the Honorable Richard S. Bernhardt denied the Assignee's Motion and vacated the show cause order. Judge Tucker is sued in his official and personal capacities. Judge Tucker also denied Plaintiff's Motion for access to the transcripts and exhibit materials presented to the grand jury. Judge Tucker, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

30.    Charles P. Strong, Esq., is the State's Attorney for Washington County, Maryland, with principal office at 33 West

Washington Street, Room 302, Hagerstown, MD 21740. The Office of the State's Attorney, in Washington County, Maryland, as in Howard County, Maryland, is part of the Executive branch of government. As the chief prosecutor for Washington County, Mr. Strong is charged with the supervision of subordinate prosecutors in his office, specifically the supervision of Jane Doe, Esq., named *infra*.

31.    Jane Doe, Esq., is an Assistant State's Attorney in the Office of the State's Attorney for Washington County, Maryland, assigned to the prosecution of incarcerable traffic offenses in the District Court in Hagerstown. Her principal place of business is the same as that of Mr. Strong, 33 West Washington Street, Room 302, in Hagerstown, MD 21740. She was assigned to the particular court room in which Plaintiff was prosecuted on two incarcerable traffic charges on May 6, 2014. Jane Doe, Esq., at all relevant times in the facts set forth in the instant complaint, acted under color of law.

32.    James Fitzgerald is the Sheriff of Howard County, Maryland. The Office of the Sheriff is a State agency and a part of the Executive branch of government, with principal place of business at 8360 Court Avenue, Ellicott City, MD 21043. Mr. Fitzgerald is sued in

29

his official and personal capacities. [2] As the principal law enforcement officer within the Sheriff's Office for Howard County, Mr. Fitzgerald is ultimately responsible for supervision of subordinate staff, including Deputy Sheriffs John Doe and Jane Doe, named *infra*. Mr. Ftizgerald, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

33.    John Doe 3 is a Deputy Sheriff employed within the Office of the Sheriff of Howard County who was engaged to "rearrest" the Plaintiff, book him and transport him to the District Court of Maryland located at 36 W. Antietam Street in Hagerstown, MD 21740. Once identified, he is sued in his official and personal capacities. John Doe 3, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

---

[2]    At the time of filing the instant Complaint, it is unclear whether the Office of the Sheriff of Howard County or if Howard County, generally, is permitted self-insure. If so, as alleged, *infra*, Plaintiff has also given Howard County government timely notice of the claims alleged in this Complaint, in a separate notice required under the Local Government Tort Claims Act, Md. Code Ann. Cts. & Jud. Procs. §§ 5-301 *et seq.*, to Margaret Nolan, Esq., on or about July 28, 2014. Plaintiff is – however - not required to give the local government entity notice of claims arising concurrent with federal claims and asserted in this tribunal.

34.    Jane Doe is a Deputy Sheriff employed within the Office of the Sheriff of Howard County, who was engaged to "rearrest" the Plaintiff, book him and transport him to the District Court of Maryland located at 36 W. Antietam Street in Hagerstown, MD 21740, on or about May 6, 2014. Once identified, she is sued in her official and personal capacities. Jane Doe, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

35.    The Client Protection Fund of the Bar of Maryland is an agency of State of Maryland government, organized within the judicial branch. Janet C. Moss is the Executive Director of the Client Protection Fund and is sued in her official and personal capacity. Leo Wesley Ottey, Jr., Esq., is Counsel for the Client Protection Fund and is sued in his official and personal capacity. The Client Protection Fund's principal place of business is located at 200 Harry S. Truman Parkway, Suite 350, Annapolis, MD 21401. As stated, *supra*, The Client Protection Fund of the Bar of Maryland is currently assigned a civil judgment against the Plaintiff, in a case styled as *Allen (sic) Tsai v. Phillip (sic) James Sweitzer*, No. 13-C-55-076156, In the Circuit Court for Howard County, Maryland. The judgment arises out of a

criminal sentence / order of restitution in an underlying criminal action, noted, *supra*, styled as *State of Maryland v. Philip J. Sweitzer*, No. 13-K-053059, in the Circuit Court for Howard County, which is an illegal sentence:    Asssant Bar Counsel and the trial judge destroyed subject matter jurisdiction in the underlying criminal matter and there is no fact-finding to support the specific dollar amount of the judgment. The civil judgment was entered on or about May 1, 2014, according to the public-available docket entries, and indexed on May 8, 2014. The Court shows Plaintiff's address as 714 Fox Ridge Lane, Lebanon, PA 17042, on the case docket, at which Plaintiff had not resided for nearly a year at the time of entry of the judgment. There was no process, and Plaintiff was never served with any of the papers in the case.   The Client Protection Fund appears to have filed to modify the judgment on or about November 13, 2014, which modification appears to have been granted on or about November 24, 2014.    Three separate written requests since December, 2014, of the Clerk of the Circuit Court of Howard County for a complete copy of the paper file have essentially been ignored. The Circuit Court for Howard County has recently amended the

docket entries in late February, 2016, to show that mail being sent to the Plaintiff at his former Lebanon, PA address is being returned to the Court, marked "undeliverable." Plaintiff has provided the Court with his current address many times in the intervening nearly-two-year period. Ms. Moss and Mr. Ottey, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

36.    Wayne A. Robey is the Clerk of the Circuit Court of Howard County, a judicial official, with principal place of business at 8360 Court Avenue in Ellicott City, MD 21043. Mr. Robey is sued in his official capacity only, and only for injunctive and/or declaratory relief. He is immune from claims for money damages under 42 U.S.C. §§ 1983 and 1985. Mr. Robey, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

37.    The Department of Public Safety and Correctional Services is an executive agency within Maryland State Government, with principal headquarters and place of business located at 300 East Joppa Road, Suite 1000, in Towson, Maryland, 21286. The Department of Public Safety and Correctional Services is principally responsible for the operation of Maryland correctional facilities and

supervision of offenders post-release, whether that release be pursuant to terms of an order for parole or probation. Steven T. Moyer is the Secretary of the Department of Public Safety and Correctional Services, and is therefore ultimately responsible for the training and supervision of DPSCS employees and agents. Mr. Moyer, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

38.    Jennifer Frankenberry is an agent with the Division of Parole and Probation, which Division is subsumed within the Department of Public Safety and Correctional Services. She currently exerts her authority and such agency within Washington County, Maryland, and has as her principal place of business the local county office of the Division of Parole and Probation at 100 West Franklin Street in Hagerstown, Maryland 21740. Ms. Frankenberry is/was the Plaintiff's Probation Officer. Ms. Frankenberry, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

39.    Howard County, Maryland, is a local political subdivision within the State of Maryland, located approximately

34

midway between the greater Baltimore and greater Washington, D.C. metropolitan communities. It has its county seat in Ellicott City, Maryland, with county headquarters at 3430 Courthouse Drive, Ellicott City, MD 21043. Allan H. Kittleman is the County Executive of Howard County, and is therefore ultimately responsible for the supervision and oversight of Howard County employees and agents. Timely notice of the claims set forth in this Complaint was given on July 28, 2014, to the County Solicitor, Margaret Nolan, Esq. Mr. Kittleman is sued in his official and personal capacity. Mr. Kittleman, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

40. The Howard County Department of Corrections is a local jail and criminal detention facility within Howard County, Maryland, located at 7301 Waterloo Road in Jessup, MD 20794. Jack Kavanagh is the Director – effectively the warden – of the Howard County Department of Corrections, and therefore ultimately responsible for the supervision of its staff, employees and agents. He is sued in both his personal and official capacity. Mr. Kavanagh, at all relevant times in the facts set forth in the instant complaint, acted under color of

law.   John or Jane Does 1-20 are Correctional Officers within the Howard County Department of Corrections, whose individual identities are presently specifically unknown to the Plaintiff, who were assigned correctional control over the Plaintiff during his period of unlawful detention and incarceration.

41.    ConMed Healthcare Management, Inc., appears to be a private Delaware corporate subsidiary of WellPath, LLC with principal corporate offices in located at a Kansas Limited Liability Company, with corporate offices at 1283 Murfreesboro Pike, Suite 500, Nashville, TN 37217.  ConMed Healthcare Management, Inc., operated the inmate medical care operations under contract for Howard County, Maryland, at the Howard County Detention Center in Jessup, MD, and – thus – acted under color of law as a state actor with constitutional responsibility to provide for Plaintiff's medical care, while confined to a state or county prison in coercive custody, under U.S. Const. Amends. V,  VIII and the decisional canon. Con Med Healthcare Mgmt., Inc., and its agents and employees, at all relevant times in the facts set forth in the instant complaint, acted under color of law.

42.    Jorge Dominicis, is the Chairman and Chief Executive Officer of Conmed Healthcare Management, Inc.,/WellPath, LLC with address of record noted in ¶ 41 above, and is sued along with his subordinates and employees in both his personal and official capacity, as the Complaint, *infra*, alleges deliberate indifference in the discharge of his constitutional duty as a state agent to deliver medical care to the Plaintiff.    ConMed appears to be an independently operating subsidiary or affiliate of Correct Care Solutions, LLC, a Kansas Limited Liability Company, with corporate offices at 1283 Murfreesboro Pike, Suite 500, Nashville, TN 37217.

43.    Yves-Jacques Piquuion, M.D.; John D Morgan, M.D.; and Oscar H. Jerkins, M.D., are physicians who were employed or contracted by Defendant Con Med Healthcare Management, Inc., to treat and render professional medical care and service to inmates and detainees within the custody of the Howard County Detention Center, with addresses as follows:  Dr. Piquion at 9901 Ashburton Lane, Bethesda, MD 20187; Dr. Morgan at 58 Stanford Lane, Falling Waters, WV 25419; and Dr. Jerkins at 2016 Mars Run Road, Essex,

MD 21221. They are sued in both their official and personal capacities. At all relevant times, they acted under color of law.

44.    Allan Tsai, D.D.S., is an adult individual who currently resides at 4942 Reedy Brook Lane, Columbia, MD 21044. He is the party who initiated a criminal complaint against the Plaintiff under the stated facts set forth, *infra*.   Dr. Tsai's spouse, Kate Tsai, is an adult individual with the same address.   She was a testimonial witness at trial against the Plaintiff. For the reasons stated, *infra*, she enjoys no judicial immunity.

45.    Brian A. Frosh, Esq., is the Attorney General of the State of Maryland, principally designated, along with the Governor, as Maryland's leading law enforcement officer of the court and its chief prosecutor, with principal offices located at 200 St. Paul Place, Baltimore, MD 21202. Mr. Frosh is sued in his official and personal capacities.   Ryan Dietrich, Esq., is or was an Assistant Attorney General in the Office of the Attorney General, in its Criminal Appeals Division, located in the same St. Paul Place address in Baltimore, MD as the principal offices of the Office of the Attorney General.   Mr. Dietrich was the Assistant Attorney General assigned to write the

State's brief in Plaintiff, Mr. Sweitzer's appeal from his judgment of conviction in the Howard County Circuit Court matter referenced, *supra.* Upon information and belief, it is Plaintiff's understanding that Mr. Dietrich has left the Office of the Attorney General and is currently a staff attorney at the United States Court of Appeals for the District of Columbia Circuit. Mr. Dietrich is sued in his personal and individual capacities. Both Mr. Frosh and Mr. Dietrich, at all relevant times, acted under color of law.

46.     Clarke F. Ahlers, Esq., is an attorney admitted to practice in Maryland and in good standing at the time of the Plaintiff's criminal trial on October 7, 2013. Mr. Ahlers maintains his professional offices at 1000 Atholton Square, Suite 100, in Columbia, MD 21043. Plaintiff contracted Mr. Ahlers to represent him in his criminal trial in the matter noted, *supra,* and Mr. Ahlers entered his appearance in the matter of *State of Maryland v. Phillip (sic) J. Sweitzer,* No, 13-K-13-053059, in the Circuit Court for Howard County, Maryland.

47.     The Court of Appeals of Maryland is Maryland's appellate court of last resort, located at 361 Rowe Blvd., Annapolis,

MD 21401. Mary Ellen Barbera is the Chief Judge of the Court of Appeals of Maryland. Judge Barbera signed an order suspending Plaintiff from the practice of law on September 21, 2014, and disbarring him on November 4, 2016. The basis of the suspension and disbarment orders were Plaintiff's unlawful criminal conviction on October 7, 2013, as set forth, *supra*. The other members of the judicial panel, located at the same address, are Hon. Clayton Greene, Jr.; and, Hon. Sally D. Adkins; and, Hon. Michelle Hotten; and, Hon. Robert N. McDonald; and, Hon. Shirley M. Watts; and, Hon. Joseph M. Getty. They are also sued in the personal and official capacities.

## BACKGROUND FACTS

48. In late 2007 and early 2008, Plaintiff was engaged by Ronald I. Kurland, Esq., a member of the Bar of this Court, to draft a Motion to Dismiss in a pending criminal matter, *State of Maryland v. Abdel Khader Diallo*, No. 03-K-06-005113, in the Circuit Court for Baltimore County, Maryland. The basis of the Motion to Dismiss was the diplomatic pedigree of the Defendant – thus, the trial court's lack of subject matter jurisdiction - whose father was an Assistant Executive Secretary General of the United Nations, stationed in Bonn

in the Federal Republic of Germany, but who – at the time of the commission of the subject offenses – was within the territorial jurisdiction of the United States on official United Nations' business, conferring in the Atlanta area with former U.S. Ambassador to the United Nations, Andrew Young. The trial court denied Defendant's Motion to Dismiss and adjudicated him guilty of the most serious charges of the indictment, remanding him to the custody of the Division of Correction and committing him to the Maryland Correctional Institution in Hagerstown, MD on February 7, 2008. The primary evidentiary basis upon which the trial court's denied Mr. Diallo's Motion to Dismiss – as the Court of Appeals later expressly held – was the trial court's reliance upon an erroneous certification supplied to the Office of the State's Attorney by the Protocol Office of the United States Department of State, which the State eventually conceded was erroneous. Upon conviction, Mr. Diallo timely noted an appeal to the Court of Special Appeals of Maryland. Plaintiff drafted a brief and filed it timely, and the case was set for oral argument on or about May 11, 2009.

49.    On May 10, 2009, however, Plaintiff suffered an ischemic stroke, which he experienced as a complete loss of sensation on the entire right side of his body, from the top of his head to his toes, which paresthesia was intermittent, occurring three or four times during the mid-to-late morning hours. Residing at the time in North East, Maryland, Plaintiff drove himself to the Paoli Memorial Hospital in the Main Line suburban Philadelphia area, where he was admitted for testing. The CT scan, carotid ultrasound and other tests demonstrated that a lesion or clot had moved into the hypothalamus portion of the Plaintiff's brain; he was also suffering from extreme essential hypertension, and an ascending aortic aneurysm.

50.    Plaintiff contacted the Court of Special Appeals the following morning from his hospital bed, as well as the Office of the Attorney General, to see if he could arrange a continuance or postponement of oral argument. Though the State did not oppose postponing oral argument, the Court nevertheless denied the motion, requiring Mr. Diallo to submit his appeal on brief. Thereafter, the Court of Special Appeals dismissed Mr. Diallo's appeal as to the claim for immunity from prosecution, based upon derivative

diplomatic status. *Diallo v. State*, 186 Md. App. 22, 972 A.2d 917 (2009). The Court of Appeals subsequently granted a writ of *certiorari*, 410 Md. 559, 979 A2d. 707 (2009), however, and vacated the opinion and order of the Court of Special Appeals in part, affirming it also in part. 413 Md. 678, 994 A.2d 820 (2010). [3]

51.    During the pendency of the *Diallo* matter, another client of the Plaintiff's made an accounting error in her ledger, and gave the Plaintiff a check for a thousand dollars ($1,000.00) drawn on an overdrawn credit line. As a result, the check she had issued to the Plaintiff was returned for insufficiency. Plaintiff's financial institution at the time, however, Sun Trust Bank, wrongly informed Plaintiff that the funds were collected, and – as such – Plaintiff drew some of the subject funds from his escrow account as earned fee. When the said check was returned unpaid, however, the overdraft took Plaintiff's escrow account into deficit status, and – as a result – Bar Counsel initiated an inquiry into the matter in late 2008 at about

---

[3]    The Court of Appeals ultimately also decided the case wrongly, however, for reasons upon which Plaintiff does not elaborate here. Mr. Diallo, however, clearly has pending claims for eight (8) years of wrongful conviction and abusive incarceration in the State of Maryland against the State and the government of the United States at the International Court of Justice in The Hague.

the same time.  In 2009, during the pendency of *Diallo* and recovering from the aforesaid stroke, Plaintiff asked the Attorney Grievance Commission for an extension of time to produce some documentary materials Assistant Bar Counsel, Marianne J. Lee, was requesting in the course of the inquiry.  In late 2009, a peer review panel convened, in which Ms. Lee accused the Plaintiff of malingering:  the gravamen of her complaint before the Peer Review Committee was that Plaintiff was faking or exaggerating his stroke symptoms, to "stall" the Commission's request for documents.   To be clear, at the time, Plaintiff had been practicing law independently for about two years, and was essentially making no money.  The reason that the overdraft in Plaintiff's escrow account occurred, is that Plaintiff never had any funds in the account, to speak of.  The suggestion, therefore, that he would need to "fake" the symptoms of a stroke to avoid producing documentation of poverty – that is, of virtually no income - was patently ridiculous.  Counsel representing Plaintiff at the time, Michael Lytle, Esq., of Byron Warnken's firm and now a staff attorney at the Court of Special Appeals, made the comment that Ms.

Lee's comments before the Peer Review Committee were the "most malicious" representations by Bar Counsel he had ever heard.

52.    Plaintiff notes here that the tenor of Ms. Lee's comment in 2009 before the Peer Review Committee is only relevant, because it was malicious in character, arose in the context of a prior disability, and thus – presents an issue in the context of the current controversy to which Plaintiff raised objection in writing in late June, 2013.

## STATEMENT OF FACTS

## THE TSAI REPRESENTATION AND COMPLAINT

53.    In February, 2011, Defendant Allan Tsai, DDS engaged Plaintiff to represent him in an appeal of a denial of his claim for benefits under a policy of disability insurance with the Penn Mutual Insurance Company.  That representation began with a request to the Maryland Insurance Administration (hereinafter, "MIA,") to investigate the insurer's denial of the claim.  MIA investigated the denial, but declined to find the said denial either arbitrary or capricious on or about June 10, 2011.  On or about June 25, 2011, Dr.Tsai, through Counsel, initiated a request for an administrative appeal to the Office of Administrative Hearings on the matter, and

directed a letter contesting the investigator, Melanie Brennan's, findings. Because the client, Dr. Tsai, had been referred to him from a colleague, Counsel agreed to discount work on the matter by more than half, charging only forty per cent of his typical ten thousand dollar ($10,000.00) fee for administrative appeals, or four thousand dollars ($4,000.00).

54.    The parties were directed to appear at the Office of Administrative Hearings in December, 2011, for a contested administrative hearing on appeal, at which point, counsel for Penn Mutual, Snowden Stanley, Esq. of Semmes, Bowen & Semmes, withdrew the insurer's denial of the claim. At that point, the insurer reinstated the claim and asked for further documentation as to the quality of Dr. Tsai's injury and the extent of his financial losses. Plaintiff then agreed to continue to represent Dr. Tsai in subsequent settlement negotiations, on a one third contingency basis. Owing to the death of his Father in March, 2012, however, and because he had at that point neglected to reduce the one third contingency fee agreement to writing, Plaintiff and Dr. Tsai agreed that the fee in the settlement representation would be limited to the amount of the

discount in the original administrative appeal representation, or six thousand ($6,000.00) dollars.

55.    After having his disability insurance claim reinstated in December, 2011, Dr. Tsai then approached Plaintiff to also represent him in a copyright infringement lawsuit that was being brought against him by a film production company, Nu Image Films, as a consequence of Dr. Tsai's unlawful intellectual property infringement, that is, repeated unauthorized downloading of film properties using a well--known peer-to-peer file-sharing program known as "BitTorrent." See BitTorrent Internet Page, available at: http://www.bittorrent.com (last accessed on August 29, 2016).

56.    After extensive review of documentation, and loss of an expert witness in the process, Robert Gerwin, M.D., the Complainant, Dr. Tsai, agreed to settle the his Penn Mutual disability claim on or about May 21, 2012, for a sum of fifty-four thousand dollars ($54,000.00). Dr. Tsai conferred with Plaintiff at the Aloft Hotel in the Arundel Mills area, adjacent to the Arundel Mills Mall, where the two had lunch, after executing the settlement agreement. Dr. Tsai

directed in the settlement agreement that the settlement proceeds be made payable to the Plaintiff.

57.    At lunch following execution of the settlement agreement, as Dr. Tsai later conceded under oath at trial on October 7, 2013, he confided to the Plaintiff that the extent of his unlawful copyright infringement/Internet piracy activity was far greater in scope than he had initially represented, and that, in a subsequent employment interview with the National Security Agency, he had essentially confessed to the commission of criminal acts.   As a result of those disclosures, moreover, the National Security Agency had denied him a security clearance and refused to consider him for employment.

58.    At the time, Plaintiff was heavily engaged in several other matters that were taking him to both Florida and Texas markets which are not detailed here.   Plaintiff at the time was preparing to sit for admission to the Florida bar, and – eventually – expected to relocate to the Tallahassee area, where he had already established a second residence.

59.    At the time of settling the Tsai Penn Mutual claim, the Tsai Nu Image representation was ongoing, and Dr. Tsai had also

asked Plaintiff to represent him in a claim against Dr. Robert Gerwin for abandoning him both as a patient and as his medical expert in the Penn Mutual claim. Because of so many demands on his time, Plaintiff drafted a letter to Dr. Tsai in late May, 2012, and, in accordance with earlier electronic mail correspondence between them, asked Dr. Tsai to agree to a fee modification in the copyright matter or to discharge him from the copyright matter: because the scope of the matter had expanded between twenty-five to fifty (25-50) fold, Plaintiff asked for a significant increase in the level of his compensation, from a thousand dollars ($1,000.00) to fifty thousand dollars ($50,000.00), designed to induce Dr. Tsai to discharge him from the ongoing copyright representation. He also asked Dr. Tsai for permission to pay certain expenses for representation in the Gerwin matter from his settlement proceeds, which request was later confirmed in writing by exchanged electronic mail. Dr. Tsai conceded under oath at trial on October 7, 2013, that he had given written permission to at least half those expenditures. There was no dispute at trial by the State as to the change in scope or fee with respect to the copyright matter. The issue the State raised at trial was

authorization to access the funds to meet the increase in fee, not entitlement to the fee, *per se.*

60.   There was no dispute at trial that Dr. Tsai's Penn Mutual settlement proceeds were lawfully received, properly deposited into Plaintiff's IOLTA account held at PNC Bank, NA, on or about June 1, 2012, at the Panama City, FL PNC branch.

61.   It was Dr. Tsai's further representation under oath at the October 7, 2013, trial referenced, *infra*, that Plaintiff had asked Dr. Tsai *in writing* for permission to use at least half his settlement proceeds for ongoing case-related expenses and fees, and that, in a rather casual email response in mid-June, 2012, the Complainant had consented to that request.

62.   In mid-June, 2012, a new attorney for Nu Image, Javad Khan, Esq., became quite recalcitrant and aggressive, threatening to "come after" Dr. Tsai for twenty thousand dollars ($20,000.00) per copyright infringement, refusing to modify Nu-Image's pre-drafted proposed settlement agreement.  At the point of receiving that late June, 2012 communication from Counsel Khan, who informed Plaintiff that he intended to amend the Complaint and serve Dr. Tsai,

(in which Dr. Tsai or his wife was to that point only named as a "John Doe" defendant, identified by IP address along with over three thousand other defendants), because Dr. Tsai was realistically confronting the prospect of $150,000.00 - $300,000.00 in liquidated damages, Plaintiff transferred the balance of the quoted flat fee to his operating account.

63.     In mid-July Plaintiff met with the Complainant and his wife in their Columbia home to discuss representation in the Gerwin matter. At the same time, another of Plaintiff's clients whose matter was in settlement discussions had given Plaintiff notice that he was proceeding on a voluntary bankruptcy petition. Uncertain of the effect of a potential bankruptcy proceeding, Plaintiff asked Dr. Tsai for specific permission to direct any future payments to them, from a source other than his IOLTA account temporarily.

64.     Matters in the Nu-Image representation, however, became more complex. In early September, when email traffic began to "bounce," Plaintiff learned that opposing Counsel, Javad Khan, Esq., was no longer employed at Nu Image's representing firm, Dunlap, Grubb & Weaver, PLLC, like Nicholas Kurtz, Esq., his

predecessor in the case.  At that point, with ten months of time invested in the matter, Plaintiff had thus outlasted two attorneys on the other side, and was fully prepared to litigate the case.

65.    In late September, 2012, Dr. Tsai made a written demand for refund of his Penn Mutual settlement proceeds.  On October 5, 2012, Dr. Tsai followed that demand with a telephone demand as well as a demand that Plaintiff continue the representation in the Gerwin matter on full contingency only.

66.    On October 6, 2012, Plaintiff directed a letter to Dr. Tsai offering to refund all fee and expense proceeds in both Gerwin and Nu Image, for leave to withdraw from both matters, including a USB drive with the entire contents of Dr. Tsai's Nu Image file. At that point, however, Dr. Tsai had already commenced a criminal complaint, of which Plaintiff was completely unaware.  Dr. Tsai did not terminate Plaintiff's representation until late October, 2012, some two weeks after he had commenced a criminal complaint.

## THE CRIMINAL COMPLAINT, ARREST AND PROSECUTION IN THE CIRCUIT COURT FOR HOWARD COUNTY

67.    On February 13, 2013, the Circuit Court for Howard County is alleged to have returned a sealed indictment in *State of Maryland v. Sweitzer*, No. 13-K-13-053059. At the time the grand jury is alleged to have returned the indictment, Plaintiff was unaware of the fact that Assistant Bar Counsel, Marianne J. Lee, Esq., an interested member of the judiciary, had appeared as a disqualified witness before the grand jury, offering testimony as a criminal accuser. Apparently, the grand jury refused to return the indictment, as a "true bill" is not part of the record: there is no indictment form executed by the foreperson of the grand jury in the entire case file. As such, Plaintiff believes the grand jury refused to indict him, and that Bar Counsel and the Assistant State's Attorney, acting in concert, fraudulently manufactured a "fake" indictment form, falsely attributing it to the grand jury. These facts have been admitted by Bar Counsel in the Court of Appeals of Maryland, on or about December 18-20, 2019, in her failure to respond in opposition to Plaintiff's Petition for Reinstatement in that Court, filed on or about November 15, 2019.

68.    On or about March 19, 2013, while driving from BWI Airport to Hagerstown, MD, Defendant Trooper First Class William Talbert (hereinafter, "TFC Talbert") initiated a traffic stop at the hotel parking lot on US Route 40 (Dual Highway), where Plaintiff had booked lodging for the evening.  Defendant rationalized the traffic stop and subsequent arrest and service of the sealed warrant on the basis that Plaintiff had made an "abrupt lane change," which he presumably believed was intended to evade him.  Plaintiff had exited Dual Highway, however, simply because he had safely arrived at his destination, the Comfort Inn and Suites in Hagerstown, MD, where he had reservations to stay for the evening.

69.    Plaintiff was subsequently arrested and taken to the Washington County holding facility, where he was served with citations for two incarcerable moving traffic offenses (case numbers 1VX0QBC and 1VY0QBC) and one non-incarcerable, non-moving traffic offense (case number 1VW0QBC), as well as the invalid warrant which Howard County eventually unsealed; he was subsequently transported to the Frederick County line by Trooper Talbert, where he was transferred to the custody of another Maryland

State Trooper, who transported the Plaintiff onward to the Howard County line, where Plaintiff was met by a pair of either Howard County police officers or Sheriff's deputies.

70.    Plaintiff was summarily transported to the Howard County Detention Center in Jessup in the early morning hours of March 20, 2013, presented himself to the Commissioner the following morning, and was released on March 21, 2013 on bond. He returned to Hagerstown, Maryland that afternoon where he met with a client as appointed.

71.    Plaintiff was concurrently charged with two incarcerable traffic offenses, in cases numbered 1VY0BQC and 1VX0BQC on March 20, 2013, in the District Court for Washington County, Maryland.

72.    Plaintiff presented himself for pretrial hearings in the Howard County matter in April and June, 2013, and the matter was set for trial in the District Court Building on Court House Drive in Ellicott City, Maryland on October 7, 2013, owing to ongoing construction in the Circuit Court building. After a brief trial of two (2) hours or less, interrupted by a plea colloquy in another

proceeding, Plaintiff was adjudicated guilty on a bench trial before the Honorable Dennis M. Sweeney.   At the close of the proceedings, Judge Sweeney specifically stated on the record that the Plaintiff's representations regarding as to whether fee was earned or not, in the course of the representation, were "not credible," based on the lack of "documentation;" this, despite the fact that at trial the State's own witness, the Complainant, Dr. Tsai, specifically testified that representation in two (2) new matters was ongoing; that Dr. Tsai had given the Plaintiff express authorization to access his settlement proceeds to pay for continuing representation; and, that the scope of one of Dr. Tsai's new, continuing matters had expanded between 25-50 fold.   In other words, the trial judge ignored the Complainant and state's witness's own exculpatory testimony.   At this point, however, the subject matter of the continuing representation and use of the funds in the continuing representation was clearly never before Circuit Court.

73.    Judge Sweeney found, on the record, instead, that Plaintiff had "stolen" funds *in the course of attorney-client representation*, from the Defendant/Complainant, Dr. Tsai, despite his

56

direct testimony that Plaintiff was authorized to receive and use the funds in question in two other ongoing matters, amounting to fifty-four thousand dollars ($54,000.00).  Following rendition of verdict, the transcript reveals the following colloquy, in which the trial judge took a required-to-be-public-bond-revocation hearing off the record into chambers, saying:

THE COURT:  But it appears to the Court that as of mid-June of 2012, *that the $54,000.00 that was on the distribution sheet* was due and owing to the Tsai's [sic] and that they were entitled to that money and certainly no later than later than September of 2012, even giving some weight to the mechanical problems of the transmittal et cetera.  But the Court is satisfied that that money was due to them or due to Mr. Tsai, and that that was, uh, has been clear from the evidence.

\* \* \*

There's *extraordinarily little documentation,* well there's *virtually no documentation* to support that and the Court has to *consider the testimony of Mr. Sweitzer.*

THE PROSECUTOR: Your Honor, at this time, the State would move to revoke the Defendant's bond.

THE COURT:  Well, what is the, what's the status of – is there a bail status right now?

DEFENSE COUNSEL: There is Your Honor, and bail was posted. I will tell the Court in just a moment what the amount is.

THE PROSECUTOR: Your Honor, his bail was $5,000.00 full.

DEFENSE COUNSEL: $5,000.00 posted in full.

THE COURT:     Uh hum, well I tell you what Counsel. I'm going to take just a brief recess. I think I'd like to see Counsel in chambers for a minute, okay?

THE PROSECUTOR:   Yes, Your Honor.

DEFENSE COUNSEL: Yes, Your Honor.

74.  During the subsequent off-record conference, of approximately half an hour in duration, of which no transcribable record exists, the trial judge proposed to use the Plaintiff's criminal conviction after rendition of verdict, as leverage to coerce a disciplinary effect: Plaintiff's compelled resignation from the Maryland Bar, for consideration at sentencing. The State neither appears to contest the fact that this occurred, nor that the trial judge was also not within his subject matter jurisdiction to even make such an offer to Plaintiff's Counsel in the unrecorded chambers conference. Defendant Clarke F. Ahlers, Esq., represented Plaintiff in the matter, who emerged from the half-hour, post-verdict "chambers

conference," visibly agitated.  Approaching counsel table, at which Plaintiff had been seated for the period of the entire half-hour conference, Mr. Ahlers advised the Plaintiff that the "bad news," was that the court was preparing to revoke his bond and to reset bond at an amount it deemed required to compensate the victim as "restitution" for the amount he had "stolen."  Mr. Ahlers, conversely, informed the Plaintiff the "good news," that is, that the Court was also not inclined to impose any period of incarceration at sentencing, *but would – instead – require the Plaintiff to resign from the Maryland Bar.* In other words, the purpose of the prosecution was to use the threat of incarceration to effect a disciplinary outcome:  payment of restitution to the client / "victim" – *with no finding of whether there was actual entitlement to the funds as earned fee despite the Complainant's sworn testimony that representation was ongoing and continuing, **and with such a finding being beyond the subject matter purview of the court in any event*** - and disbarment for the Plaintiff.  According to Counsel Ahlers, the Assistant State's Attorney, Ms. McGuinn, had also made a comment in chambers that Bar Counsel, Defendant Lee, had also reported some sort of communique between the two of

them. Upon information and belief, Bar Counsel appeared to have communicated with the Office of the State's Attorney for Howard County, specifically to communicate defamatory information with the prosecutor to influence the process of criminal prosecution.

75. At the end of the off-the record conference, the Judge retook the bench, and made the following announcement,: as the trial transcript demonstrates at pages 187-190:

THE COURT:                    I had some discussion with Counsel in chambers about how we should proceed here and if there's nothing more that anybody wants to put on the record about this, what I'm going to do is I'm going to revoke the current bond status of the Defendant and put up a bond at this point of $57,000.00 in cash or cash equivalence to be posted with the Clerk of the Court prior to the Defendant's release pending sentencing. That that will be a posting that will be eventually designed to go to the victims in this case upon further Court order.

* * *

DEFENSE COUNSEL:              May I approach with the State for just a moment?

THE COURT:                    Yes.

DEFENSE COUNSEL:"             Did Your Honor [inaudible]?

60

THE COURT:                   Hmm?

DEFENSE COUNSEL:             Did Your Honor – [inaudible]? Shut me
                            up if I'm –

THE COURT:                   Yeah, *I'm hesitant because it's another, you
                            know, it's another --*

THE PROSECUTOR:              I have to *call him* anyway —

THE COURT:                   *Tell him* I think there's some urgency to
                            it. [9]

THE PROSECUTOR:              Yes.

THE COURT:                   I'm not going to make that a condition
                            at this point.

DEFENSE COUNSEL:             That's fine.

THE COURT:                   Because I'm not sure of *my ability to make
                            that a condition* at this point.

DEFENSE COUNSEL:             Yes, Your Honor.

THE COURT:                   All right.

                                    * * *

---

[9]     Defendant surmises that the "him" in the transcript excerpt in question is the investigator for the Attorney Grievance Commission of Maryland, Defendant Marc Fiedler, who later wrote the Defendant in prison to "inform" him – incorrectly – that the Attorney Grievance Commission was entitled to communicate with the Court essentially whenever it pleased about pending criminal matters.

THE COURT:                    Let me put it this way. If, uh, I would
                              see that, if he *voluntarily* does something
                              *in that area, I would see that as a mitigating*
                              *factor for sentencing.*

(TT. 10/7/2013: 187-190)(emphases added).

76.    In addition to convening the post-trial conference to effect

a disciplinary consequence clearly beyond its subject matter purview,

the finding of "theft" in the amount of fifty-four thousand dollars

($54,000.00) thus, also transmogrified into a greater amount of fifty-

seven thousand dollars ($57,000.00) in the time between the Court's

having taken a recess, had its half-hour off-record conference, and

returning to the bench, without any findings of record to support the

increased amount.  Because a restitution order is part of a criminal

sentence, the disparity between the factual finding and the court's

enunciation of the amount of the restitution order – with no findings

in the record to support the increased amount – thus also rendered

the Court's sentence illegal on a second ground, and the missing

portion of the record "prejudicial," as that term is construed by

*Wilson.*

## INCARCERATION AND ILLNESS IN CUSTODY

77.    Plaintiff was subsequently remanded to the custody of the Howard County Department of Corrections in Jessup, Maryland, for the period October 7, 2013, until June 25, 2014, and lost his personal liberty for the entire period, the said custodial detention also tolling the statute of limitations for filing the instant lawsuit.

78.    During the said period Plaintiff was subjected to custodial confinement; lack of adequate sanitation; [10] instances of unwanted personal touching that are too numerous to even estimate, during involuntary searches upon exiting and entry into the residence; loss of privacy; and other insults and indignities detailed, *infra*, by the John Doe Correctional Officer Defendants.

79.    The said institution had no internal exercise area, and because of a particularly inclement winter weather season, very basic

---

[10]    Institutional Methicillin-Resistant Staphylococcus Aureus (hereinafter, MRSA) is prolific in the Howard County Detention Center's restrooms and there were several instances of inmate infection in the common residence area in which Plaintiff was housed. The infected inmates were not isolated. Aerosol disinfection of restroom areas was sporadic and irregular.

63

outdoor exercise areas were not regularly available during much of the Plaintiff's period of confinement.

80.    During the said period of confinement, Plaintiff contracted an infection in an ulcer on his right foot, in early February, 2014, which did not resolve with dispensation of three separate courses of antibiotic medication.

81.    Persistent, non-healing foot wounds/ulcers are a very common symptom of diabetes mellitus.

82.    During the entire period of his incarceration, the Plaintiff was required to walk four flights of stairs to access the medical offices within the Howard County Detention Center, twice daily, for dispensation of anti-hypertension medication. Despite this, medical staff never bothered to run a simple blood culture on the wound; or run a simple blood glucose level.

83.    Plaintiff filed the appropriate grievances complaining of lack of appropriate care with respect to the foot infection in accordance with the administrative remedies set forth in the Howard County Detention Center's institutional handbook, to no effect.

PROSECUTION FOR INCARCERABLE TRAFFIC OFFENSES

84.    At the time of his arrest on March 19, 2013, as stated, Plaintiff was cited for two incarcerable traffic offenses, in the case numbers set forth in paragraph 64, *supra*.  For the reasons stated, the citations were defective, because the initial intrusion was bad.

85.    Because of his failure to receive mailed court summonses with the reset hearing date, owing to his incarceration on October 7, 2013, with the revised date having been reset to October 24, 2013, an arrest warrant was eventually issued against the Plaintiff during the period of his incarceration at the Howard County Detention Center. Writs of *habeas corpus ad testificandum* were issued on or about April 16, 2014, and Plaintiff was taken into custody by the Howard County Sheriff Deputies named in the caption and transported to the District Court of Maryland for Washington County on or about May 6, 2014.

86.    Plaintiff was paraded around the District Court courtroom in a prison jumpsuit with manacles/handcuffs on his hands to appear at said hearing on May 6, 2014.  At the hearing, the Assistant State's Attorney agreed to dismiss both incarcerable traffic citations, with case numbers specified in paragraph 69, *supra*.    The

State, summarily, entered *nolle prosequi* dispositions. There was, therefore, no utility or purpose in having Plaintiff appear in court, other than to humiliate him.

87.    Plaintiff agreed to pay the citation for failure to display a current registration sticker on his registration tag. The expired tag was not the impetus for the traffic stop, on the evening of March 20, 2013, discovered by Trooper Talbert only after Plaintiff had stopped his vehicle in the hotel parking lot.

## POST RELEASE

88.    On or about May 8, 2014, the State of Maryland entered a civil judgment from the criminal restitution order entered earlier, against the Plaintiff in the matter of *Allen (sic) Tsai v. Philip J. Sweitzer*, No. 13-C-55-076156, In the Circuit Court for Howard County, Maryland. The Client Protection Fund sought enforcement by pursuing assignment on or about November 24, 2014, noted *supra.*

89.    Less than ninety (90) days after release, on or about September 12, 2014, Plaintiff presented himself at the Meritus Medical Center Emergency Department at 11116 Medical Campus Road, Hagerstown, for evaluation of the persistent foot wound and,

ostensibly, dispensation of an effective course of antibiotic therapy. At said time, Plaintiff was advised that he was suffering from extreme hyperglycemia and undiagnosed diabetes mellitus, and that, because his hemoglobin A1C level was so highly elevated – 12.2 – this explained the failure of his foot ulcer to heal.

90.    Plaintiff, suffering from diabetic ketoacidosis, was admitted to the Meritus Medical Center on September 12, 2014 through September 14, 2014. Upon discharge, he was referred to the Meritus Medical Wound Care Center, where he continued post-discharge treatment and therapy until early July, 2016.

91.    Plaintiff continues to treat his diabetes mellitus. Owing to his history of vision impairment, as of the date of the filing of this complaint, Plaintiff has only recently had his motor vehicle operating privilege reinstated as of May, 2016. Plaintiff underwent cataract extraction and interocular lens implant surgery in November, 2015 and January, 2016 at the University of Maryland.

92.    On September 22, 2014, on Bar Counsel's Petition for Disciplinary Action, the Court of Appeals, by way of an order executed by the Defendant, Honorable Mary Ellen Barbera, Chief

67

Judge of the Court of Appeals, suspended Plaintiff from the practice of law, based upon his purported "conviction" for a serious crime, despite the fact that the judgment was void *ab initio*, owing to mixing of matters beyond the trial court's subject matter jurisdiction with matters within its subject matter jurisdiction.

93.    On or about December 1, 2014, Plaintiff filed Appellant's Brief in the matter of *Philip J. Sweitzer v. State of Maryland*, No. 582, September Term, 2014, In the Court of Special Appeals of Maryland. Chief among the several questions presented, was the "blending" of attorney disciplinary and criminal matters at trial, and the obvious dilution of the beyond-a-reasonable-doubt evidentiary standard inherent in that kind of impermissible hybrid; [11] and, the missing half hour of trial transcript and prejudicial effect of that missing portion of the record, with the dollar amount of the "theft" in question still in question after rendition of verdict.    Though Plaintiff clearly implied the destruction of subject matter jurisdiction on direct appeal, he did not specifically raise it as an issue, knowing it is always preserved.

---

[11]    *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

94.    West's Reporting Service selected Plaintiff's appeal for inclusion on its national "Watch List" of appeals of particular merit in February, 2015.

95.    Upon filing, the Clerk's office of the Court of Special Appeals "lost" the extra copy of Appellant's Brief included for time-stamping and return to the Plaintiff, with Mr. Hilton, the Clerk of the Court, offering no real explanation for the extra copy's "disappearance." On information and belief, it appears clear court personnel were intentionally procedurally manipulating the appeal to "lose" it.

96.    On April 14, 2015, believing he would certainly prevail on appeal owing to two issues on which he had already prevailed in earlier cases, and given the national level of interest in the case, Plaintiff filed a Motion to Terminate the Petition for Disciplinary Action and to Hold *Sub Curia*, pending disposition of the appeal.

97.    Bar Counsel opposed the Motion to Terminate. *Bar Counsel's specific basis for opposing the Motion was collection of the illegal judgment of restitution*, assigned to the Client Protection Fund of the Bar of Maryland, noted *supra*. Bar Counsel, therefore used the force

of professional sanction and depriving the Plaintiff of his constitutionally-protected property interest in his license to practice law, to collect an unlawful civil judgment, arising out of an illegal sentence/restitution order.

98.    On Thursday, May 21, 2015, the Court of Appeals of Maryland ruled in Bar Counsel's favor, denying Plaintiff's Motion to Terminate Petition for Disciplinary Action.

99.    *Two business days later,* on the Tuesday following Memorial Day, May 26, 2015, the Honorable Kevin H. Arthur, of the Court of Special Appeals of Maryland, affirmed the trial court in all respects, denying Plaintiff all relief. With temporal proximity clearly understood to be evidence of causation, the Court of Appeals thus appeared to inject itself and the issue of attorney disciplinary matters *directly* into the *criminal* appellate process as well, an appeal before the intermediate appellate court, one that *also had no subject matter jurisdiction over attorney disciplinary matters.*

100.    With respect to the missing portion of the trial record, Judge Arthur commented that there was "no evidence" of "blending" of attorney disciplinary and criminal matters in Plaintiff's trial.

101. The Court of Special Appeals of Maryland, thereafter, denied Plaintiff's Motion for Reconsideration.

102. It also denied Plaintiff's request to report its order and opinion in Atlantic Reports, despite the demonstrated national level of interest in the case from West Publishing.

103. The Court of Appeals of Maryland denied Plaintiff's Petition for a Writ of Certiorari and further review on or about August 12, 2015, which specifically raised the issue of joint executive and judicial action in Plaintiff's criminal prosecution and violation of separation of powers.

104. Thereafter, the Chief Justice of the United States granted Plaintiff's Application for Extension of Time to File a Petition for a Writ of Certiorari in that Court, on October 20, 2015, until February 18, 2016.

105. In the interim, however, on or about July 15, 2015, the State of Maryland, i.e., the Department of Parole and Probation had filed a charge of violation of probation with the trial court, the Circuit Court for Howard County, Maryland, seeking enforcement of the same obligation on which the Client Protection Fund, an agency of

the judiciary, had already pursued enforcement action as well, by seeking assignment of the obligation on the civil side. The Judiciary and the Executive, therefore, each sought to enforce the very same judgment concurrently, by force.

106. After granting two postponement requests, because of eye surgery the Plaintiff had successfully scheduled in November, 2015, after several previous delays, the Plaintiff opposed the State's violation of probation charge on subject matter jurisdiction grounds.

107. The State neither responded to the Motion nor did it oppose. In a factual subject matter jurisdiction contest, this Court has ruled that the burden is on the Plaintiff to show continuity of subject matter jurisdiction, once it has been contested factually.

108. In December, 2015, with destruction of subject matter jurisdiction not disputed by the State, nor continuity of subject matter jurisdiction shown by the State, Plaintiff then filed a Motion to Vacate his Void Judgment of Conviction.

109. The State also did not oppose. At that point in time, Plaintiff was unaware of the level of collusion between the Judiciary

and the Executive, and – specifically – that Asst. Bar Counsel was acting as a member of the prosecution.

110.  On February 4, 2016, the Honorable Timothy McCrone denied the Plaintiff's Motion to Vacate his Conviction.  He also denied the Plaintiff's Motion to Terminate or Modify Probation, completely without explanation.

111.  On February 9, 2016, the Honorable Timothy McCrone vacated his denial of the Plaintiff's Motion to Terminate or Modify Probation.  The envelope containing the said vacated order was contained in the same envelope also containing the entire court case docket and other papers from the Clerk, which mailing was not post-marked *until three (3) weeks later*, on March 3, 2016.  The period for noting an appeal from the order denying *vacatur* of the void judgment of conviction expired on Monday, March 7, 2016, which was the actual date Plaintiff received the Court's mailing.  The Court appeared to hold the mailing for a very long time, until the period for filing a Notice of Appeal had nearly expired.

112.  On Tuesday, March 8, 2016, the Honorable Timothy McCrone recused himself from further consideration of the case, and the case was reassigned to another judge.

131.  On or about April 4, 2016, the Client Protection Fund of the Bar of Maryland then filed a Motion for Contempt in the civil judgment matter styled as Allen (sic) Tsai, numbered 13-C-55-076156, inasmuch as it apparently procured an order to compel discovery sometime in February, 2016.  As the case docket makes clear, there has been no process, service of process in the civil judgment/lien matter, which the Court has taken pains, currently, to note.

114.  On or about May 14, 2016, Plaintiff filed a request for the transcript of the grand jury proceedings in the substantive criminal action noted above, *supra,* in ¶ 20.

115.  Assistant State's Attorney, Defendants Broccolino and McGuinn, filed a response to the Plaintiff's Motion on or about May 24, 2016, stating that there had been no recordation of the grand jury proceeding.

116.  Two days later, on May 26, 2016, Assistant Bar Counsel Marianne J. Lee, Esq., hurriedly substituted out of both disciplinary

matters the Attorney Grievance Commission had instigated against the Plaintiff.    On information and belief, Ms. Lee, Assistant Bar Counsel, had inappropriate contact with the grand jury proceeding, ostensibly appearing as a witness before the grand jury as a member of the judiciary, contact that the Office of the State's Attorney had apparently been concealing.

117.   On or about June 10, 2016, Deputy Bar Counsel Raymond Hein, Esq., also corresponded with Plaintiff, to notify him that in early and mid-May, 2013, Assistant Bar Counsel, Ms. Lee, and the Assistant State's Attorney, Ms. McGuinn, had exchanged correspondence, to collude, trade off and cooperate in investigatory responsibilities in their respective open matters.  None of this contact between Assistant Bar Counsel and the Assistant State's Attorney, nor Assistant Bar Counsel's ostensible grand jury testimony, nor the failure of recordation of the grand jury proceeding, was disclosed prior to the date of Plaintiff's criminal trial, October 7, 2013.

118. On June 29, 2016, Deputy Bar Counsel, Mr. Hein, appeared in the Circuit Court for Washington County in an attorney disciplinary fact-finding hearing, which the Court of Appeals had

authorized.    The docket reveals, however, that two Motions to Dismiss the action for destruction of subject matter jurisdiction were brought by the Plaintiff (named as Respondent in the action in question), which Assistant Bar Counsel *did not oppose and – in fact – to which she did not even respond.* Defendant the Honorable Daniel P. Dwyer issued his findings of fact and conclusions of law, which were transmitted to the Court of Appeals of Maryland. On or about August 1, 2016, Plaintiff filed exceptions to Judge Dwyer's factual findings.

119.   On July 1, 2016, the Client Protection Fund's Motion for Contempt terminated in the Plaintiff's favor, and the Honorable Richard S. Bernhardt vacated the Show Cause Order, which *vacatur* was docketed on July 7, 2016.

120.   On July 18, 2016, the Plaintiff filed a Second Motion to Vacate his Void Judgment of Conviction.

121.   The State did not oppose.

122.   On August 8, 2016, Defendant, the Honorable William V. Tucker denied Plaintiff's Motion to Vacate, in a one-word order, entirely without explanation.

123.   On on about August 5, 2016, the Client Protection Fund of the Bar of Maryland, filed a Second Motion/Petition for Contempt in the civil judgment/lien case, number 13-C-55-076156, in which it has been assigned rights against the Plaintiff.

124.   Plaintiff filed a Response in Opposition to the Client Protection Fund's Second Motion for Contempt on August 18, 2016.

125.   The Circuit Court for Howard County held the Motion and Plaintiff's Response to the Motion for nearly two weeks until August 30, 2016, when it returned a time-stamped copy to the Plaintiff on August 31, 2016.  On the same date, Plaintiff received a notice from the Court of Appeals of Maryland setting oral argument in the matter of oral argument in his disciplinary case.  On information and belief, it appears that there was direct coordination between the Circuit Court for Howard County and the Court of Appeals of Maryland.

126.   The Circuit Court for Howard County issued a show cause order on the Client Protection Fund's Petition for Contempt, which opposing Counsel, Defendant Ottey, apparently attempted to serve on the Plaintiff at his former Hagerstown, MD address

sometime in late September, 2016. Service was ineffective. Plaintiff moved generically to vacate the show cause order, premised on information available on the publicly-viewable docket entries.

127. On November 3, 2016, the Court of Appeals entertained argument on Bar Counsel's Petition for Disciplinary Action. The Court denied a request to continue oral argument to facilitate appearance of counsel, who was otherwise engaged at a conference in Florida on lead litigation.

128. On November 4, 2016, the Court of Appeals entered an order disbarring the Plaintiff, despite specific knowledge that Assistant Bar Counsel did not dispute her inappropriate involvement in and manipulation of a criminal "investigation."

129. On or about December 20, 2016, the Circuit Court for Howard County held a hearing on the Client Protection Fund's Motion for Contempt, at which Plaintiff did not appear, inasmuch he had never been served with the show cause order. The Client Protection Fund, moreover, an agency of the Judiciary, may not have an interest – much less a direct financial interest – in a criminal sentence it may be called upon to review at any time, under settled

federal decisional authority. The Circuit Court nevertheless issued a writ of body attachment, which Plaintiff has subsequently moved to quash. The Circuit Court did not return time-stamped copies of the Plaintiff's Motion to Quash.

130. On December 27, 2016, Plaintiff moved once again in the underlying criminal matter, No. 13-K-13-053059, to vacate the judgment of conviction, premised on lack of subject matter jurisdiction, owing to Assistant Bar Counsel's disqualified participation as a grand jury witness and the State's suppression of all transcription of the grand jury proceeding.

131. The State did not oppose the motion.

132. The Circuit Court did not return time-stamped copies of the Plaintiff's third Motion to Vacate, despite the inclusion of return postage, until April 14, 2017, after the Circuit Court had denied the motion, again without explanation.

133. This Complaint follows.

<u>CLAIMS FOR RELIEF</u>

<u>COUNT I – VIOLATION OF CONSTITUTIONAL RIGHTS
PURSUANT TO 42 U.S.C. § 1983 – FOURTH AMENDMENT –
UNREASONABLE SEIZURE</u>

79

134. The allegations of ¶¶ 1-133 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

135. Defendant Trooper Talbert acted as an agent of State of Maryland government under color of law. Defendant Trooper John Doe and Defendant Howard County Sheriff's Deputies or Howard County Police Officers John Doe 1 & 2 acted as agents of State of Maryland government under color of law.

136. The traffic stop conducted on March 20, 2013, was unlawful, inasmuch as there is no such statutory offense in Maryland as an "abrupt lane change." Maryland does recognize the statutory traffic offense of an "unsafe lane change." Obviously, having arrived safely at his destination, with no action to impede the movement of other traffic, Plaintiff could not have given Defendant Talbert reasonable, articulable suspicion to believe he had violated the law.

137. The State of Maryland conceded on or about January 31, 2017, that the sealed arrest warrant issued on or about February 13, 2013, was unlawful and issued in the face of the destruction of subject matter jurisdiction in the grand jury, with the unlawful involvement of Assistant Bar Counsel and its admission on May 24, 2016, that no

record of the grand jury proceeding even exists. In point of fact, as the State has now admitted in the Court of Appeals, the grand jury returned no "true bill" of indictment.    There was insufficient evidence, apparently, presented to the grand jury to establish even probable cause to determine that the State had the *right to suspect* that Plaintiff had committed a crime.

138.   The State of Maryland entered *nolle prosequi* dispositions as to the incarcerable traffic charges, arising out of Plaintiff's unlawful seizure, at the trial on May 6, 2014, in the cases specified in ¶ 69, and the said actions terminated in the Plaintiff's favor.

139.   As such, the traffic stop, seizure and eventual arrest of the Plaintiff was constitutionally offensive.  The arrest was the intial act, in a continuing course of criminal prosecution, which did not end until the termination of Plaintiff's probation, or – alternatively - the State's subsequent procurement of a writ of body attachment in the related civil matter arising out of his sentence.

140.  Inasmuch as Plaintiff specifically informed the named officer(s) that he had committed no statutory offense justifying the traffic stop and subsequent detention and arrest, the warrant issued

on February 13, 2013 was defective, and the officers refused to release him, his arrest was actually malicious. As stated above, with no record of the grand jury proceeding; no "true bill" of indictment in the record; and no subject matter jurisdiction over the cause, which facts are uncontested, the arrest warrant was fatally defective.

WHEREFORE, Plaintiff prays this Honorable Court for the following relief against the Defendants specified in ¶ 135, *supra*:

a.     The payment of compensatory damages in the amount of two hundred fifty thousand dollars ($250,000.00); and,

b.     The payment of punitive damages in the amount of two hundred fifty thousand dollars ($250,000.00); and,

c.     Such other injunctive and further relief as this Court may deem reasonable, just, and within the scope of its sound discretion.

### COUNT II - CONSTITUTIONAL VIOLATION AND CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHT PURSUANT TO 42 U.S.C. §§ 1983 & 1985 – DENIAL OF DUE PROCESS

141.    The allegations of ¶¶ 1-140 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

142. The State does not dispute that Defendant Lee was a disqualified witness before the grand jury.

143. The State does not dispute that Defendant Lee only has statutory authority in attorney disciplinary matters. As such, she could only testify to the grand jury about her experience and knowledge of attorney disciplinary matters.

144. The State does not dispute that the Circuit Court had no subject matter jurisdiction over attorney disciplinary matters at the time of the grand jury proceeding.

145. Ms. McGuinn, as an officer of the Executive, had no standing to act in concert with Ms. Lee, an officer of the Judiciary, in furtherance of any attorney disciplinary policy or goal.

146. Ms. Lee, as an officer of the Judiciary, had no standing to act in any way that might be considered in furtherance of a criminal prosecution, or to act in any way in which she might be considered a criminal accuser. It seems clear that her involvement in the grand jury was designed specifically to "rig" the process of prosecution, to structurally bias the investigation and subsequent proceedings, by

inserting the judiciary directly into the prosecution, giving the judiciary an interest in the outcome of the case.

147. Despite their separate enumerated powers, Defendants Lee and McGuinn, nevertheless acted in concert to deny Plaintiff due process of law, by acting intentionally to structurally bias and prejudice the criminal proceeding in Howard County.

148. Thereafter, Defendants Lee and McGuinn acted to conceal their highly prejudicial conduct, and failed to disclose their concerted act. It is settled law that any conduct that is even *potentially* exculpatory, taken into the grand jury to make it "secret," is reason to invalidate the indictment and arrest warrant.

149. While incarcerated, the Plaintiff also received correspondence from Investigator, Defendant Marc Fiedler, in which he essentially urged the Plaintiff that Bar Counsel was permitted to contact the Circuit Court for Howard County effectively however and whenever he or she pleased to do so. It was apparent, moreover, from context of the proceeding that the Assistant State's Attorney, Ms. McGuinn, had communicated extensively with Mr. Fiedler.

WHEREFORE, Plaintiff prays this Honorable Court for the following relief as to Defendants McGuinn, Lee, and Feidler jointly and severally, who acted under color of law:

a.   That it AWARD the Plaintiff compensatory damages in the amount of one million dollars ($1,000,000.00), plus attorney's fees and the costs of the instant action; and,

b.   That it AWARD the Plaintiff punitive damages in the amount of one million dollars ($1,000,000.00), the Defendants' actions being actually malicious in character, plus attorney's fees and costs of the instant action; and,

c.   Such other injunctive and further relief as this Court may find reasonable, within the scope of its sound discretion, and in the interests of justice.

### COUNT III - CONSTITUTIONAL VIOLATION AND CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHT PURSUANT TO 42 U.S.C. §§ 1983 & 1985 – DENIAL OF DUE PROCESS

150.   The allegations of ¶¶ 1-149 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

151.   As such, as the direct and proximate result of Defendants'
actions, Plaintiff has been denied due process of law, inasmuch as his
criminal trial was inappropriately blended with the subject matter of
an attorney disciplinary proceeding as a coercive ploy and both a
procedural and substantive shortcut to ultimately impose attorney
discipline; thus, the State of Maryland, Attorney Grievance
Commission, and Assistant Bar Counsel have used Plaintiff's
"conviction" in case number 13-K-13-053059, in the Circuit Court for
Howard County, as an established legal fact in a subsequent
disciplinary proceeding styled as *Attorney Grievance Commission v.
Philip J. Sweitzer*, No. 11, September Term, 2015, In the Court of
Appeals of Maryland, (and in a subsequent fact-finding proceeding
which the Attorney Grievance Commission has initiated on February
2, 2016, styled as *Attorney Grievance Commission v. Philip J. Sweitzer*,
No. 16-056210, In the Circuit Court for Washington County)   to
*obviate the need for an actual attorney disciplinary hearing in which the
Court of Appeals of Maryland has authorized fact-finding and properly
conferred subject matter jurisdiction upon the trier of fact prior to the
commencement of the proceeding.*  That proceeding was heard before the

Honorable Daniel Dwyer on June 29, 2016, and findings of fact were issued to the Court of Appeals of Maryland on or about July 18, 2016, to which Plaintiff filed exceptions.

WHEREFORE, Plaintiff prays this Honorable Court for the following relief as to Defendants McGuinn, Sweeney, McCrone, Tucker, Grossman, Lee, Hein, Dwyer and Fiedler, jointly and severally, who acted under color of law:

d.    That it AWARD the Plaintiff compensatory damages in the amount of one million dollars ($1,000,000.00), plus attorney's fees and the costs of the instant action; and,

e.    That it AWARD the Plaintiff punitive damages in the amount of one million dollars ($1,000,000.00), the Defendants' actions being actually malicious in character, plus attorney's fees and costs of the instant action; and,

f.    Such other injunctive and further relief as this Court may find reasonable, within the scope of its sound discretion, and in the interests of justice.

<u>COUNT IV - CONSTITUTIONAL VIOLATION</u>
<u>PURSUANT TO 42 U.S.C. §§ 1983 and 1985 –</u>
<u>DEPRIVATION AND CONSPIRACY TO DEPRIVE OF</u>
<u>DUE PROCESS - PUBLIC TRIAL</u>

152.   The allegations of ¶¶ 1-151 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

153.   The State and the trial judge agreed and acted in concert to take the post-verdict "conference," relevant to sentencing matters and the judge's wish to impose compelled disbarment in lieu of imposition of incarceration, *off the record into a private meeting between respective counsel and the trial judge.*  The record reflects that, within two minutes of making a motion to revoke the Plaintiff's bond at trial, as the State's Attorney was already preparing to leave the courtroom, the trial judge also retired from the bench.

154.   It is admitted by the State that the Plaintiff was not present at the backroom "chambers conference."

155.   It is admitted by the State in post-trial motions, that the trial judge sought to impose attorney discipline in the post-verdict, off-record conference, that is, Plaintiff's compelled resignation from the Bar, in exchange for leniency in not imposing incarceration, at sentencing.  That fact, moreover, is reiterated at the very end of the trial record at pages 189-190.

156.   It is admitted by the State that the backroom chambers conference matter was not subject to recordation of any sort, which was not known at the time:   chamber conferences are frequently recorded.  Plaintiff did not knowingly "waive" recordation.

157.   It is admitted by the State that the post-verdict sentencing and "disbarment" conference was not conducted in public view, but beyond the view of the public in a closed "chambers conference."

158.   It is admitted by the State that the off-record "chambers conference" dealt not merely with questions of law, but also with issues of fact relevant to the issues of guilt and sentencing.

159.   It is beyond dispute, as a matter of public record, that the Plaintiff raised this issue on direct appeal to the Court of Special Appeals.

160.   It is beyond dispute, as a matter of public record, that the Defendant, Ryan Dietrich, Esq. and Brian Frosh, Esq. defended the Plaintiff's unlawful conviction on appeal; and, that the Honorable Kevin Arthur, affirmed the Plaintiff's judgment of conviction, indicating in his order and opinion that there was "no evidence" of blending of attorney disciplinary and criminal matters at Plaintiff's

criminal trial. Defendant Sweeney, indicated on the record that he had both heavily scrutinized the Plaintiff's testimony at trial and imputed lack of credibility to that testimony based on Plaintiff's having declined to go further in producing actual client files and "documentation" of such matters at trial, eventually imputing guilt and imposing incarceration as a result of the very same "consideration." Defendant Sweeney, moreover, essentially ignored the Complainant/Defendant Tsai's exculpatory testimony, particularly as to the ongoing nature of the representation and authorization to use funds.

161. It is beyond reasonable dispute, as a matter of law, that the Defendant, the Honorable Kevin Arthur, as a member of the bench Court of Special Appeals, also has no subject matter authority over matters of attorney discipline. Ruling on evidentiary matters, therefore, pertaining to attorney discipline is also beyond Judge Arthur's subject matter purview. As such, in ruling to affirm the Plaintiff's conviction and find that the failure to record a half hour of chambers proceeding was not determinative, the Defendant, Judge Arthur affirmed and agreed that violating the Plaintiff's public trial

right was constitutionally permissible, premised on finding "no evidence" of blending of attorney discipline subject matter with that of a criminal trial, with such evidence having been specifically suppressed by the State .

162.  As a direct and proximate result of these State officials' actions, Plaintiff was damaged in his person, his bodily integrity as alleged *supra* and *infra*, in his property, professional credential, profession and reputation.

WHEREFORE, Plaintiff respectfully prays this Honorable Court for the following relief, against the said Defendants, McGuinn, Dietrich, Lee, Hein, Sweeney and Arthur, who acted under color of law:

a.    An award of compensatory damages in the amount of one million dollars ($1,000,000.00) and attorney's fees and costs of this action;

b.    An award of punitive damages in the amount of one million dollars ($1,000,000.00) and attorney's fees and costs of this action; and,

c.    Such other and further equitable, injunctive or other relief

as this Honorable Court may find reasonable, just and within

the scope of its sound discretion.

<u>COUNT V – DEPRIVATION OF AND CONSPIRACY TO
DEPRIVE OF CONSTITUTIONAL RIGHTS PURSUANT TO 42
U.S.C. §§ 1983 and 1985 – DUE PROCESS VIOLATION –
ENTRY OF JUDGMENT WITH NO NOTICE</u>

163.    The allegations of ¶¶ 1-162 are incorporated by reference

in this paragraph, as though restated and set forth in full herein.

164.    Plaintiff was tried in case number 13-K-13-K-053059 on

October 7, 2013, and held continuously in State custody owing to

revocation of bond, until sentencing, which was postponed twice,

until April 28, 2014.

165.    On April 28, 2014, Plaintiff was sentenced to a term of five

years' incarceration, with all but one year suspended. The sentencing

judge, the Honorable Dennis Sweeney, also entered a facially illegal

restitution order against the Plaintiff in the amount of fifty-seven

thousand dollars ($57,000.00) as part of the criminal sentence, even

though he had made a finding on the record at trial that the amount

of the "theft" in question differed in amount (fifty-four thousand

dollars ($54,000.00)), changing the amount at the trial proceeding to

the higher amount on the record at the October 7, 2013, after retaking the bench following the after-verdict-off-record "conference." There is no fact finding on the record to support the dollar amount of the restitution order. The sentence and the restitution order, therefore, is illegal.

166.  On or about May 8, 2014, the trial court entered a civil judgment against the Plaintiff in case number 13-C-55-076156, styled as *Dr. Allen (sic) Tsai v. Phillip (sic) J. Sweitzer.*

167.  The criminal restitution order was the basis for entry of the civil judgment.

168.  There was no process.

169.  There was no service of process.

170.  There was no opportunity to be heard.

171.  If there was ever subject matter jurisdiction in the substantive criminal action, which Plaintiff disputes here on other grounds, it was destroyed by the utter and complete failure of service.

172.  The Attorney Grievance Commission, on or about February 2, 2016, appended a copy of the unserved order of

restitution in a subsequent disciplinary proceeding in the Circuit Court for Washington County, and therefore made it the factual basis for an actually Court-of-Appeals-authorized attorney disciplinary matter commenced on May 21, 2014. Neither the State nor any of its agencies have demonstrated effective service of any process in the civil judgment/lien matter.

173. Plaintiff has contested effective service in two separate motions, which are matters of public record. The Honorable Timothy McCrone ruled against the Plaintiff, reflexively agreed with the validity of Judge Sweeney's order, and sustained the legality of the civil judgment in a one-word denial, without explanation, as to at least one of those motions.

174. On or about November 24, 2014, the Client Protection Fund of the Bar of Maryland, whose director is Janet C. Moss, an agency of the Judiciary, sought and was granted assignment of the civil judgment. The Judiciary may not have an interest, much less a direct financial interest, in a criminal sentence, which may be corrected, and is therefore subject to review, at any time.

175.  The Court subsequently threatened the Plaintiff with reiterative incarceration for failure to pay the judgment, nevertheless, by action of the Department of Parole and Probation, by agent Jennifer Frankenberry, who acts under the supervision and direction of Stephen T. Moyer, the Director of the Department of Public Safety and Correctional Services; and by a Motion for Contempt brought by the Client Protection Fund in mid-April, 2016, under the auspices of its attorney Leo Wesley Ottey, Jr., Esq.   In late May, 2016, Defendant, The Honorable William V. Tucker, entered a meritless show cause order against the Plaintiff in the matter of the Client Protection Fund's frivolous motion for contempt.   The Client Protection Fund filed a second Motion for Contempt on or about August 5, 2016.

176.  Plaintiff's constitutional right to notice of official court action against him was abridged and violated.  Plaintiff has notified the court, in the person of the Clerk of the Court, Wayne A. Robey, that the Court is maintaining an incorrect address for the Plaintiff on the docket of the civil judgment, a residential address in Lebanon, PA, at which Plaintiff has not resided for over a year at the time of entry of the judgment.  Plaintiff produced copies of notices sent by

the Department of Parole and Probation, that were returned to the Department for incorrect address. The Court now concedes that service on the Lebanon address is ineffective, and that the Postal Service is returning mail, and marking it "undeliverable." Plaintiff has not changed his address since June 25, 2014, until September 1, 2016.

177. On July 1, 2016, the Honorable Richard S. Bernhardt agreed with the Plaintiff, vacating a show cause order that had been entered against the Plaintiff in the said contempt proceeding initiated by the Client Protection Fund of the Bar of Maryland.

178. Because Plaintiff alleges that subject matter jurisdiction was destroyed in the civil judgment as well, owing to a complete failure of service, there is no judicial or official immunity.

179. As a direct and proximate result of the aforesaid actions, Plaintiff was damaged in his property, reputation, profession and personal bodily integrity (through threat of incarceration while ill), by the said Defendants' actions, who acted under color of law.

WHEREFORE, Plaintiff, Philip J. Sweitzer, respectfully prays this Honorable Court for the following relief against the said

Defendants McGuinn, Sweeney, McCrone, Moss, Ottey, Moyer and Frankenberry, jointly and severally:

a.   An AWARD of compensatory damages in the amount of fifty-seven thousand dollars ($57,000.00), representing the face amount of the order of restitution;

b.   An AWARD of punitive damages in the amount of fifty-seven thousand dollars ($57,000.00), inasmuch as the continued threat of incarceration was demonstrably malicious;

c.   An AWARD of attorney's fees and the costs of bringing the instant action; and.

d.   Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

### COUNT VI - DEPRIVATION OF AND CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. §§ 1983 and 1985 – SEPARATION OF POWERS VIOLATION /UNLAWFUL CONCENTRATION OF STATE POWER

180.   The allegations of ¶¶ 1-179 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

181. The Client Protection Fund (hereinafter, "CPF") of Maryland, by Director Janet C. Moss, and the Department of Parole and Probation acted in concert and by concentrating State power to enforce the very same judgment, both by proceeding with civil enforcement by the CPF and by threatening the Plaintiff with a violation of probation and the possibility of reincarceration.

182. As a direct and proximate result of unlawfully concentrating State power against him, Plaintiff was damaged by the said Defendants in his property, reputation and emotional and bodily integrity, who acted in color of law.

183. Defendants Lee and McGuinn acted in concert, unlawfully, as alleged *supra*, to procure Plaintiff's conviction.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to the said Defendants, McGuinn, Lee, Sweeney, McCrone, Ottey and Frankenberry, jointly and severally:

a.    An AWARD of compensatory damages in the amount of two hundred fifty thousand dollars ($250,000.00);

98

b.    An AWARD of punitive damages in the amount of two hundred fifty thousand dollars ($250,000.00), inasmuch as the continued threat of incarceration was demonstrably malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT VII - CONSTITUTIONAL VIOLATION PURSUANT TO 42 U.S.C. § 1983 – DEPRIVATION/IMPAIRMENT OF PERSONAL LIBERTY INTEREST

184.   The allegations of ¶¶ 1-183 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

185.   Plaintiff was held unlawfully and against his will for a period of at least two hundred sixty-three (263) days in the Howard County Detention Center prior to and after rendition of a judgment of conviction which – at this point – the State of Maryland has not even bothered to dispute was a void judgment by virtue of destruction of the adjudicating tribunal's destruction of subject matter jurisdiction, or action beyond its subject matter jurisdiction.

186.  As stated, *infra* and *supra*, Plaintiff was subjected to great shame, personal indignity, physical and emotional degradation, including incidents of personal assault and loss of privacy too egregious and numerous to even recall, during the said periods of unlawful detention.

187.  The fact of the detention is beyond dispute, as it is a matter of public record.

188.  Plaintiff has at all times maintained his factual innocence, and the lack of authority of the tribunal in question to rule on the subject matter of the dispute between Plaintiff and Defendant Tsai.

189.  As a direct and proximate result of the unlawful detention and incarceration imposed by the State of Maryland and the said Defendants, who acted under color of law, Plaintiff was seriously injured in his bodily and emotional integrity; he was unlawfully deprived of his property; he was evicted from his residential rental property in Lebanon, Pennsylvania and, consequently, lost all of his household furnishings and personal effects, as well as all his personal clothing in that residence.  He was eventually forced to vacate his professional office at 10 East Chase

Street in downtown Baltimore, which occurred during the extended period of his incarceration.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to *all named Defendants*, as follows:

    a.    An AWARD of compensatory damages in the amount of five million dollars ($5,000,000.00);

    b.    An AWARD of punitive damages in the amount of five million dollars ($5,000,000.00), inasmuch as the incarceration and deprivation of personal liberty was demonstrably malicious;

    c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

    d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

<u>COUNT VIII - CONSTITUTIONAL VIOLATION PURSUANT TO 42 U.S.C. § 1983 – FIFTH AND FOURTEENTH AMENDMENT – DELIBERATE INDIFFERENCE TO MEDICAL NEED WHILE IN DETENTION PRIOR TO IMPOSITION OF JUDGMENT</u>

190.  The allegations of ¶¶ 1-189 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

191.   As stated, *supra*, following his unlawful conviction on October 7, 2013, Plaintiff was involuntarily committed to State custody and remanded to the Howard County Detention Center, on Waterloo Road in Jessup, Maryland, where he remained continuously until his release on or about June 25, 2014, and the custody and care of Defendant Jack Kavanaugh, Director, under the direct supervision of Defendant, Allan H. Kittleman, County Executive.  On information and belief, the medical services provided by the Howard County Detention Center are contracted by the local governmental (Howard County) entity, with State of Maryland authorization, and rendered by the named medical professionals and contractor Defendant ConMed, Inc., which fulfills a state constitutional responsibility even as a private contractor, and – therefore – may be sued as a state actor.  All the named Defendants, thus, acted under color of law.

192.   While in custody, Plaintiff was seen by various medical staff and treated by registered nurses, and contract physicians, specifically a nurse Alban and other nurses whose names are not clear from the relevant medical records; Yves-Jacques Piquion, M.D.;

and, John D. Morgan, M.D.; and Oscar H. Jerkins, M.D., whose signatures are appended to the medical records but which are not legible, at least twice daily, to receive dispensation of two kinds of anti-hypertensive medication.

193. In late February, 2014, Plaintiff developed a non-healing foot wound that failed to respond to repeated dispensation of anti-biotic therapy.

194. As alleged, *supra*, non-healing foot wounds are a typical symptom of untreated diabetes.

195. The said defendants did not administer a simple blood glucose test.

196. The said defendants did not administer a simple blood culture of the wound. Moreover, the Defendants specifically noted on Plaintiff's institutional medical record that he was **not** a diabetic, when *they had administered no testing to make such a determination*.

197. The said defendants were deliberately indifferent to Plaintiff's underlying diabetic condition, inasmuch as the symptoms of the foot wound failed to resolve; they were seeing the Plaintiff at

least twice daily, sometimes more frequently; and they failed to take even minimally effective medical treatment procedures and did not even administer very simple blood glucose test by making a finger needle prick to extract a blood droplet for absorption into a Glucometer test strip, to determine if Plaintiff was hyperglycemic.

198.   Defendants were deliberately indifferent, as that term is construed in *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

199.   As a direct and proximate result of the said Defendants' failure to administer minimally effective treatment, who acted under color of law, which was the proximate cause of Plaintiff's injuries, and to implement and properly train employees in institutional procedure and the constitutional requirements incumbent upon State contractors operating in a prison setting, within approximately seventy (70) days of release, Plaintiff was admitted to the Meritus Medical Center in Hagerstown, Maryland on or about September 12, 2014, after presenting at the Meritus Medical Center Emergency Department with the same unresolved foot wound, hyperglycemia of approximately 570 milligrams of glucose per deciliter of blood and a

hemoglobin A1C level in excess of 12, demonstrating protracted, average, long-term hyperglycemia for at least ninety (90) days.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to the said Defendants, Nurse Jane Doe (Alban), Piquion, Morgan, M.D., Jerkins, Con Med Health Care Management, Inc., Dominicis, Kavanagh, and Kittleman, jointly and severally:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of five hundred thousand dollars ($500,000.00), inasmuch as the failure to provide the medical treatment was a consequence of deliberate indifference;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

COUNT IX- VIOLATION OF CONSTITUTIONAL RIGHTS
PURSUANT TO 42 U.S.C. § 1983 – EIGHTH AMENDMENT –
DELIBERATE INDIFFERENCE TO MEDICAL NEED AFTER
IMPOSITION OF ILLEGAL SENTENCE – CRUEL AND UNUSUAL
PUNISHMENT

200.   The allegations of ¶¶ 1-199 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

201.   Arising out of the same facts, as in ¶¶ 191-199, *supra*, the specified causes, damages and failure to administer constitutionally-required medical treatment continued after Plaintiff's sentencing, with the same consequences, the only difference being that the constitutional deprivation after imposition of judgment occurred as a violation of the Eighth Amendment.  The named Defendants acted under color of law.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to the said Defendants, Nurse Jane Doe/Alban, Piquion, Morgan, Jerkins, Con Med Health Care Management, Inc.,, Dominicis, Kavanaugh, and Kittleman, jointly and severally:

a.      An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of five hundred thousand dollars ($500,000.00), inasmuch as the failure to provide the medical treatment was a consequence of deliberate indifference;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

### COUNT X - VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT - DEPRIVATION OF PROPERTY INTEREST IN LICENSE TO PRACTICE LAW WITHOUT DUE PROCESS OF LAW

202.    The allegations of ¶¶ 1-201 are incorporated by reference in this paragraph, as though  restated and set forth in full herein.

203.    Plaintiff has a constitutionally-protected property interest in his professional license to practice law, in which he has invested great effort and for which he is indebted over a hundred thousand dollars for his legal education.

204.    Defendants McGuinn, Lee, Fiedler, Hein, Tsai (both), and Sweeney conspired for the purpose of using a void and illegitimate

107

criminal conviction as an unconstitutional "springboard" to impose suspension and revocation of the Plaintiff's license to practice law and to shortcut, avoid and obviate the need to try the facts of Defendant's professional disciplinary matter within the proper context of an attorney disciplinary proceeding, and to gain advantage by force. Essentially, they elected to engage in extortionate conduct to force and shortcut the disbarment process. They also used the act of suspension of Plaintiff's law license to engage in the collection of an illegal "debt," as alleged, *infra*.

205. The said Defendants acted under color of law, – on information and belief – believing they enjoyed the ostensible protections of prosecutorial, judicial and witness-derived immunity.

206. The said Defendants, however, exceeded their standing and ventured beyond their subject matter authority.

207. The purpose of the Defendants' actions was to deprive the Plaintiff of his professional license, and to bypass or shortcut the standard professional disciplinary process. The May 7, 2013, letter of Defendant Lee to Defendant McGuinn, marked Exhibit "B" makes this irrefutably clear.

208.  Plaintiff was directly and proximately damaged, as on September 22, 2014, Defendant Barbera executed an unlawful order suspending Plaintiff from the practice of law, without affording him the detailed, and Court-of-Appeals-authorized, fact-finding due process of law.  Summarily, on or about November 4, 2016, she executed an order unlawfully disbarring Plaintiff.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to the said Defendants, McGuinn, Lee, Hein, Fiedler, Tsai, Sweeney and Barbera, jointly and severally:

a.  An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.  An AWARD of punitive damages in the amount of five hundred thousand dollars ($500,000.00), inasmuch as the failure to provide the medical treatment was a consequence of deliberate indifference;

c.  An AWARD of attorney's fees and the costs of bringing the instant action; and,

109

d.      Such other and further equitable, injunctive and other

relief as this Court may find reasonable, just, and within the scope of

its sound discretion.

<u>COUNT XI - DEPRIVATION OF CONSTITUTIONAL RIGHT AND
CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHT
UNDER 42 U.S.C. §§ 1983 AND 1985 – DESTRUCTION OF OR
FAILURE TO RECORD GRAND JURY PROCEEDING - FIFTH
AMENDMENT</u>

209.  The allegations of ¶¶ 1 – 208 are incorporated by

reference in this paragraph, as though restated and set forth in full

herein.

210.  On May 24, 2016, the Assistant State's Attorney,

Defendant McGuinn, admitted in writing that proceedings before the

grand jury, believed to have occurred on or about February 13, 2013,

were not subject to recordation.  On Plaintiff's Motion to produce the

transcripts of the proceedings, the Defendant, the Honorable William

Tucker denied the Plaintiff's request after the Assistant State's

Attorney's conceded that recordation of the proceedings had been

suppressed.  The Motion in question was submitted post-trial, for the

purpose of challenging subject matter jurisdiction on other grounds

and preparing to bring a post-conviction petition.

211.   Two days later, on May 26, 2016, after filing the response and the court's denial of his the Motion, Assistant Bar Counsel, Marianne J. Lee, moved to substitute her appearance for Defendant the Attorney Grievance Commission of Maryland, in the disciplinary cases identified in ¶ 151 *supra*, substituting Defendant Hein's appearance for her own.   On information and belief, the reason for Ms. Lee's need to hastily substitute her appearance out of the disciplinary cases, ostensibly, was her inappropriate contact with the grand jury proceedings, specifically her involvement as a criminal accuser and witness before the grand jury.   **As a member of the judiciary and by virtue of her earlier involvement in an earlier disciplinary peer review inquiry that never actually happened**, Ms. Lee would necessarily be a disqualified interested witness before the grand jury, and her presence before the grand jury would destroy subject matter jurisdiction – her only personal knowledge of matters being in relation to attorney disciplinary matters – and irretrievably structurally bias the proceedings. Thus, it is also believed that recordation of the grand jury proceedings was specifically suppressed as part of an agreement between the Defendant McGuinn

and Defendant Lee, to intentionally make any record of the proceedings unavailable and to secrete or hide potentially exculpatory evidence.

212.  The said Defendants acted under color of law.

213.  Plaintiff has a constitutional right to the transcript of proceedings before the grand jury, pursuant to *Dennis v. United States,* 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed.2d 973 (1966).  According to *Dennis,* this right arises under both the Fifth and Sixth Amendments, at a minimum.

214.  Plaintiff was denied his constitutional right to the transcript of the proceedings under the Fifth Amendment, as the proximate result of the Defendants' actions.

215.  Defendants John/Jane Doe Grand Jurors 1-23, returned an invalid indictment and issued an invalid arrest warrant, owing to the violation of subject matter jurisdiction in the said proceedings; Ms. Lee's unavailability to appear as an accuser in a criminal proceeding; and, the prosecution's failure to disclose potentially exculpatory information.

216.    Plaintiff was damaged with an unlawful arrest, criminal trial, incarceration, loss of personal liberty and its other deleterious professional disciplinary effects,   as alleged, *supra*, and the said Defendants actions were the proximate cause of his damage.

WHEREFORE, Plaintiff, Philip J. Sweitzer, respectfully prays this Honorable Court for the following relief, as to the said Defendants McGuinn, Lee, and John/Jane Doe Grand Jurors 1-23, jointly and severally:

a.    An AWARD of compensatory damages in the amount of one million dollars ($1,000,000.00);

b.    An AWARD of punitive damages in the amount of one million dollars ($1,000,000.00), inasmuch as the suppression of recordation of the proceedings was intentional and malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

COUNT XII - DEPRIVATION OF CONSTITUTIONAL RIGHT
AND CONSPIRACY TO DEPRIVE OF CONSTITUTIONAL RIGHT
UNDER 42 U.S.C. §§ 1983 AND 1985 – DESTRUCTION OR FAILURE
TO RECORD GRAND JURY PROCEEDING - SIXTH AMENDMENT

217.  The allegations of ¶¶ 1 – 216 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

218.  Owing to the operative facts elucidated in ¶¶ 209-216 in particular, with respect to the failure to transcribe or destruction of the grand jury proceedings, Plaintiff was also deprived of his Sixth Amendment confrontation rights.

WHEREFORE, Plaintiff, Philip J. Sweitzer, respectfully prays this Honorable Court for the following relief, as to the said Defendants, McGuinn, Lee, and John/Jane Doe Grand Jurors 1-23, jointly and severally:

a.    An AWARD of compensatory damages in the amount of one million dollars ($1,000,000.00);

b.    An AWARD of punitive damages in the amount of one million dollars ($1,000,000.00), inasmuch as the suppression of recordation of the proceedings was intentional and malicious;

114

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XIII – RETALIATION/HARASSMENT AFTER NOTICE UNDER AMERICANS WITH DISABILITIES ACT

219.    The allegations of ¶¶ 1-218 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

220.    Plaintiff is a qualified individual with covered disabilit(ies) under the statute.    Specifically, Plaintiff suffered a traumatic brain injury in 2004; an ischemic stroke in 2009; and was severely visually impaired beyond legal blindness for all of the period of June, 2012 through January, 2016, until completion of cataract and interocular lens implant surgery.

221.    Plaintiff was subjected to harassment by Defendants McGuinn, Lee, Hein and Grossman, and – by extension – by the Defendant agencies the Attorney Grievance Commission and the State of Maryland.

115

222.  The harassment was based upon the Plaintiff's disability. Specifically, Defendant Lee alleged in correspondence to Defendant McGuinn on or about May 7, 2013, that Plaintiff's vision disability should be read, instead, to infer a pattern of obstreperous conduct and "evading service" of process.  She did so specifically to gin up prosecutorial zeal.   Plaintiff was not "evading service" in any way. He was severely visually impaired, and solely reliant on third parties for transportation.   On the date he was eventually served with process in this Court's Greenbelt, MD courthouse facility, to reach the said facility, he was required to take a taxi from BWI airport, unable to drive himself.

223.  The harassment was pervasive and severe:  Defendants Lee and McGuinn unlawfully manipulated a criminal prosecution to ensure Plaintiff was convicted of a "crime" he could not have committed, by the testimony of the State's own witness.  Plaintiff was ultimately disbarred on November 4, 2016.  Plaintiff, moreover, endured nearly a year of punitive incarceration from October 7, 2013 until on or about June 25, 2014,  during which period a) the State subjected him to extreme untreated diabetic hyperglycemia;  and, b)

his ex-wife and son's Mother, JoAnn (née Thomas) Sweitzer, died from ovarian cancer or about June 14, 2014, while he was in custody.

224.    Defendant Lee certainly was aware of Plaintiff's severe visual impairment at the the time she engaged in the harassment: Plaintiff specifically requested a delay in a scheduled peer review proceeding to accommodate eye doctor appointments in anticipation of cataract extraction surgery as early as mid-2012. Defendant Grossman and the Attorney Grievance Commission were specifically informed, and a written complaint and specific request to have other Bar Counsel assigned, was specifically made in writing in July, 2013.

WHEREFORE, Plaintiff, Philip J. Sweitzer, respectfully prays this Honorable Court for the following relief, as to the said Defendants McGuinn, Lee, and Fiedler, State of Maryland, and Attorney Grievance Commission, jointly and severally, who acted under color of law:

a.    An AWARD of back pay for lost fee revenue in the amount of one million dollars ($1,000,000.00);

b.    An AWARD of other compensatory damages in the amount of one million dollars ($1,000,000.00);

117

c.     An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.     d. Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

### COUNT XIV – CIVIL RICO CLAIM – 18 U.S.C. § 1962 *et seq.*

225.  The allegations of ¶¶ 1-224 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

226.  As alleged in ¶ 35, *supra*, the Client Protection Fund of the Bar of Maryland exists, in part, to indemnify clients of Maryland attorneys found to have engaged in defalcation.   The Client Protection Fund of Maryland (hereinafter, "CPF"), the Attorney Grievance Commission of Maryland (hereinafter, "AGC") and the Office of the State's Attorney are an "enterprise" as identified by statute.   CPF is represented in civil collection proceedings in the matters described, *supra*, by the Defendant, Leo Wesley Ottey, Jr.

227.  As alleged, *supra*, both the AGC and the CPF engaged in a pattern of unlawfully manipulating criminal trial proceedings, along with the Office of the State's Attorney and Department of Public

Safety and Correctional Services, to concentrate state power and procure both prosecutorial and disciplinary advantage, in clear contravention of constitutional limits on their separate and enumerated powers under the United States Constitution: in sum, the intent all along has been to "rig" or intentionally structurally bias the prosecution by placing a disqualified member of the judiciary inside. Ensure the State cannot lose: with an interest in the prosecution, the Judiciary and the Executive are both playing on the same team.

228. Defendants Lee, Grossman, Fiedler, Hein and Ottey then used disciplinary process and procurement of suspension and revocation of Plaintiff's license to practice law as a ploy to effect collection of an unlawful judgment of restitution, assigned to the Client Protection Fund of the Bar of Maryland. They also used Defendant Frankenberry to concurrently threaten revocation of probation, and – thus – continuation of criminal sentence, and at the same time they pursued civil collection efforts.

229. As stated, the trial judge, Defendant Sweeney, specifically stated on the trial record that if the Plaintiff would be willing to

119

"voluntarily" submit a resignation from the Bar to the Court of Appeals of Maryland, which has original, exclusive and complete [subject matter] jurisdiction over any such matter, and the *trial judge saw that there had been a disciplinary outcome without further need for the State to prosecute the disciplinary matter, the trial judge would be willing to grant leniency in sentencing.*

230.  The trial judge, therefore, in addition to actually veering into the disciplinary issue by "considering" "documentation" of questions of attorney/client matters as a factual predicate to his imputation of guilt, **tied the condition of imposition of judgment in the criminal proceeding at sentencing,** *directly to a disciplinary outcome*, over which he had *no subject matter authority*, and *of which he was entirely aware.* It is all there in black and white right in the trial record, "evidence" that the intermediate appellate tribunal had to really avert its view quite strenuously to avoid.

231.  While the idea that one could "voluntarily" resign from the Bar, having already been convicted of an infamous crime, at the point-of-the-gun of coercive incarceration is – on its face – ludicrous enough, the fact is, *resignation from the Bar only occurs on petition to and*

120

*acceptance of the petition by the Court of Appeals of Maryland, which alone has subject matter jurisdiction and approval authority over any such request.* The likelihood that the Court of Appeals of Maryland would accept and authorize a "voluntary resignation" after conviction for an infamous crime is so remote, it seems clear that the entire "criminal" proceeding here was merely a pretext for the disciplinary outcome, and that Bar Counsel was running the entire show behind the scenes, as the apparent involvement of the investigator for the Attorney Grievance Commission in discussions at the bench tends to underscore.

232. On the 24th day of April, 2015, Mr. Grossman and Ms. Lee, in particular, filed a Response to the Respondent's Motion to Terminate the instant Petition for Disciplinary Action in this action, in which they made quite clear that Bar Counsel and the Attorney Grievance Commission of Maryland sought continuation of the instant suspension order owing to the Circuit Court's order "to pay restitution to his client in the principal amount of $57,000.00, which he still has not done."

233. Defendants Grossman, Lee, Hein, and Dwyer, thereafter, conducted a "fact-finding" proceeding on or about June 29, 2016, the "fact-finding" of which was a sham proceeding to sustain the unlawful suspension of the Plaintiff's license to practice law and to – ultimately – disbar him.

234. The named Defendants and their pattern of actions were the proximate cause of the Plaintiff's injuries.

235. In engaging in a pattern of abusively manipulating a criminal prosecution; procuring and threatening to procure coercive incarceration to enforce a patently illegal sentence/judgment; and, to gain civil advantage in a disciplinary proceeding yet to be filed in May, 2014; and by using denial of reinstatement of his professional qualification in May, 2015 as a collection ploy to collect an unlawful "debt," as well as to deny the Plaintiff due process of law by way of the typical disciplinary process, the said Defendants violated 18 U.S.C. § 1962 *et seq.*

236. Moreover, the pattern of using threat of incarceration and denial of professional credential to collect a patently unlawful sum

continues unabated:   the Circuit Court issued a writ of body attachment against Plaintiff in October, 2016.

WHEREFORE, Plaintiff, Philip J. Sweitzer respectfully prays this Honorable Court for the following relief:

a.      An award of treble damages against the said Defendants Sweeney, McGuinn, Frankenberry, Ottey, and Moss, Fiedler, Lee, Grossman, Barbera, Hein and Dwyer, the Attorney Grievance Commission and State of Maryland of the ten million dollar ($10,000,000.00) base amount alleged in Counts XIX and XX *supra*, which is to say, thirty million dollars ($30,000,000.00), jointly and severally; and,

b.      The costs of bringing the instant action.

### COUNT XV – VIOLATION OF 42 U.S.C. §§ 1983, 1985 – VIOLATION OF RIGHT/CONSPIRACY TO DEPRIVE OF FAIR, IMPARTIAL TRIAL/ COMMISSION OF PARTIAL, NON-JUDICIAL ACT(S)

237.   The allegations of ¶¶ 1-236 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

238.   By aligning the interests of the Judiciary with those of the Executive, Defendants Lee, McGuinn, Grossman, Lawless, Sweeney,

123

Broccolino, Arthur, Barbera, Adkins, Greene, Hotten, Watts, Getty, and McDonald denied Plaintiff his right to a fair and impartial criminal trial, and subsequent appeal. By definition, where the interests of the Executive and Judiciary are aligned, the Judiciary is incapable of being fair and impartial.

239. In this proceeding, on or about October 10, 2019, Plaintiff made a request of this Court to order the preservation of records, inasmuch as the grand jury transcripts, post-trial conference, and other materials from the Circuit Court for Howard County had disappeared, been destroyed, or were not preserved. The Court of Appeals of Maryland has, likewise, refused to abide by its own precedent in refusing to order the release of Plaintiff's disciplinary file to him, despite five (5) requests of Bar Counsel and offer to pay for duplication of the record.

240. Within days of that request, The Honorable George Levi Russell, substituted out of this case. Judge Stephanie A. Gallagher issued a ruling in late October denying all relief, premised – in part – on Judge Russell's prior order, which she incorporated by reference.

241.    Plaintiff assumes, (without actually knowing by virtue of both courts' failure to disclose the relevant records) by the refusal to order disclosure and preservation of records, that materials both within the Court of Appeals' control and within this Court's ambit and control, tend to establish or reinforce his claims.    Plaintiff believes that there was likely *ex parte* communication between this Court, i.e., Judge Russell and his staff, and staff in either the Court of Appeals or the Attorney Grievance Commission/Bar Counsel offices, which may include expressions/indicia of partiality.  Judge Russell's initial statement in this case certainly appears to favor the Defendants.  Any statements favoring one party over the other, or *ex parte* "connivance" with an opposing party, favoring a "canned" or predetermined disposition, are considered "non-judicial," inasmuch as demonstrable partiality is not a judicial act.  As such, Judge Russell is not immune from suit for his partiality, and his prior rulings here are not binding. *Rankin v. Howard*, 633 F.2d 844, (9th Cir., 1980), *cert. denied, sub nom. Zeller v. Rankin*, 451 U.S. 939 (1981).

244.    Likewise, Judge Gallagher, incorporating Judge Russell's ruling by reference as a rationale to deny preservation of

records, also engaged in partiality, merely by adopting his ruling. She, therefore, is also no longer covered by the doctrine of absolute judicial immunity.

WHEREFORE, Plaintiff, Philip J. Sweitzer respectfully prays this Honorable Court for:

a.    An award of damages in the amount of one million ($1,000,000.00) dollars;

b.    An award of punitive damages, inasmuch as the denial of an impartial trial was inherently malicious, in the amount of one million ($1,000,000.00) dollars; and,

c.    An award of attorney's fees and costs of bringing this action;

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## STATE LAW CLAIMS

## COUNT XVI

## VIOLATION OF MARYLAND DECLARATION OF RIGHTS PURSUANT TO ARTICLE 8 – SEPARATION OF POWERS VIOLATION AND UNLAWFUL CONCENTRATION OF STATE POWER

245.    The allegations of ¶¶ 1-244 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

246.    The complaints of violations of the separate, enumerated powers set forth in Counts II, III and Counts VI also give rise to this claim for constitutional deprivation, asserted in the aggregate, under Article 8 of the Maryland Declaration of Rights, which right is more strictly defined than the federal right.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to the said Defendants McGuinn, Lee, Hein, Fiedler, and Sweeney jointly and severally:

a.    An AWARD of compensatory damages in the amount of two hundred fifty thousand dollars ($250,000.00);

b.    An AWARD of punitive damages in the amount of two hundred fifty thousand dollars ($250,000.00), inasmuch as the failure to provide the medical treatment was a consequence of deliberate indifference;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XVII - FALSE ARREST

247.    The allegations of ¶¶ 1-246 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

248.    As stated, *supra*, Defendant Talbert initiated a traffic stop without probable cause or reasonable suspicion on March 20, 2013, and subsequently handcuffed, detained and took Plaintiff into custody at the hotel parking lot in Hagerstown without either reasonable suspicion or without probable cause, based upon running a "warrant check," on a warrant issued by the same grand jury that returned a facially invalid indictment and defective warrant, premised upon a grand jury proceeding of which there is no ascertainable record whatsoever.    The State, moreover, did not disclose the grand jury proceeding's inherent defect and disclose exculpatory facts until nearly three (3) years after trial, on or about May 24, 2016.    The State has subsequently admitted in the Court of Appeals of Maryland that the sealed arrest warrant was defective.

249. At the subsequent hearing on the "incarcerable" traffic charges, which proceeded to trial on May 6, 2014, the State of Maryland subsequently entered *nolle prosequi* dispositions as to those charges on May 6, 2014.

250. Plaintiff suffered loss of personal liberty, loss of bodily integrity, bodily injury, indignity to his person and damage to his property and reputation as the proximate cause of the Defendant's unlawful seizure.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendant Talbert, his related agency, the Maryland Department of State Police and the State of Maryland:

a.    An AWARD of compensatory damages in the amount of two hundred fifty thousand dollars ($250,000.00);

b.    An AWARD of punitive damages in the amount of two hundred fifty thousand dollars ($250,000.00), inasmuch as the arrest was malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XVIII - FALSE IMPRISONMENT

251.    The allegations of ¶¶ 1-250 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

.252.    All named Defendants, acting as agents for Howard County, Maryland and the State of Maryland, jointly and severally, held the Plaintiff against his will for periods varying in length from an (1) hour to two-hundred sixty-three (263) days.

253.    The detention/incarceration was without legal justification, inasmuch subject matter jurisdiction was destroyed upon institution of prosecution, and any judgment of conviction entered against the Plaintiff was void and a legal nullity. Alternatively, the presence of Assistant Bar Counsel in the grand jury as an interested, disqualified witness destroyed the validity of the indictment and any warrant.

254.    Plaintiff's false imprisonment was actually malicious.

255. As a consequence of Plaintiff's false imprisonment, Plaintiff suffered injury to his reputation; loss of his professional practice; he was subsequently subjected to professional discipline and suspension; Plaintiff suffered injury to his bodily integrity and health, as stated, *supra*; he suffered severe emotional distress; and, he suffered injury to his property.    The Defendants' actions were the proximate cause of the Plaintiff's injuries.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to all named Defendants:

a.    An AWARD of compensatory damages in the amount of five million dollars ($5,000,000.00);

b.    An AWARD of punitive damages in the amount of five million dollars ($5,000,000.00), inasmuch as the false imprisonment was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

131

## COUNT XIX - MALICIOUS PROSECUTION

256.   The allegations of ¶¶ 1-255 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

257.   Plaintiff was presented for prosecution by Defendant Talbert, the State of Maryland, State's Attorney Charles P. Strong, Assistant State's Attorney Jane Doe, in case number 1VX0QBC on or about May 6, 2014, in the District Court of Maryland for Washington County.

258.   The criminal cause against the Plaintiff was initiated without legal justification and for a purpose other than bringing the Plaintiff to justice, namely personal humiliation and vindictiveness: Defendant Talbert witnessed no offense and his "suspicion" was neither reasonable nor articulable.

259.   The State paraded the Plaintiff around the District Court court room in a jailhouse jumpsuit and handcuffs, principally to embarrass and humiliate him.

260.   The action terminated in the Plaintiff's favor on May 6, 2014.   As a proximate and direct cause of Defendants' actions, Plaintiff suffered injury to his bodily integrity and health, as stated,

*supra*; he suffered severe emotional distress; and, he suffered injury to his property and his professional reputation.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants Strong, Fitzgerald, Jane Doe, and Talbert, as well as the State of Maryland:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of five hundred thousand dollars ($500,000.00), inasmuch as the malicious prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XX - MALICIOUS PROSECUTION

261.    The allegations of ¶¶ 1-260 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

133

261. Plaintiff was presented for prosecution by Defendant Talbert, the State of Maryland, State's Attorney Charles P. Strong, Assistant State's Attorney Jane Doe, in case number 1VY0QBC on or about May 6, 2014, in the District Court of Maryland for Washington County.

262. The criminal cause against the Plaintiff was initiated without legal justification and for a purpose other than bringing the Plaintiff to justice, namely, personal humiliation and vindictiveness.

263. The action terminated in the Plaintiff's favor on May 6, 2014. And, as a direct and proximate result of the Defendants' actions. Plaintiff suffered injury to his bodily integrity and health, as stated, *supra*; he suffered severe emotional distress; and, he suffered injury to his property and professional reputation.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants Strong, Jane Doe, and Talbert, as well as the State of Maryland:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of five hundred thousand dollars ($500,000.00), inasmuch as the malicious prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXI - MALICIOUS USE OF CIVIL PROCESS (CONTEMPT)

263.   The allegations of ¶¶ 1-262 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

264.   Defendant State of Maryland, through sitting District Court Judge Stephen Baker, initiated a contempt proceeding against the Plaintiff in case number 0302SP007362013 on or about December 13, 2013, for failure to appear in a rent court proceeding in the District Court of Maryland for Cecil County.   At the time of the said proceeding, the State of Maryland was holding the Plaintiff in custody in the Howard County Detention Center in Jessup, Maryland, against his will.

265. Plaintiff had never met the purported client.

266. Plaintiff had never been engaged by the client to appear.

267. A third party filed an unauthorized entry of appearance with the District Court, of which Plaintiff was completely unaware, which clearly does not bear the Plaintiff's signature.

268. Without any knowledge of the proceeding, and *being unlawfully detained by the same party – the State of Maryland - who complained of his failure to appear*, the contempt proceeding initiated by the State was clearly malicious.

269. Plaintiff was later further damaged, and subjected to a professional disciplinary inquiry as a result of the State's malicious conduct.

270. The entire proceeding was initiated with the ulterior purpose of exposing the Plaintiff to such a professional disciplinary proceeding , which, as alleged, *supra*, eventually occurred.

271. The proceeding, however, terminated in the Plaintiff's favor, on or about January 8, 2015. Plaintiff suffered injury to his bodily integrity and health, as stated, *supra*; he suffered severe

emotional distress; and, he suffered injury to his property and professional reputation.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendant State of Maryland:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of five hundred thousand dollars ($500,000.00), inasmuch as the malicious prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

<u>COUNT XXII - MALICIOUS PROSECUTION</u>

272.   The allegations of ¶¶ 1-271 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

137

273. On or about February 13, 2013, the State of Maryland, through Defendant McGuinn, acting through a grand jury, instituted prosecution of the Plaintiff in case number 13-K-13-053059, In the Circuit Court for Howard County.

274. The prosecution was brought without probable cause and for a purpose other than the dispensation of justice, that is, as a pretext for the rendition of a professional disciplinary outcome, over which the Executive neither has standing, nor subject matter authority. The indictment was defective and should not have issued. In fact, it appears the grand jury never returned a "true bill" of indictment. Thus, no warrant should have issued. In her May 7, 2013, correspondence with Assistant Bar Counsel, Defendant Lee, further, Ms. McGuinn acted to advise Ms. Lee how to use the criminal proceeding to effect service of the civil disciplinary summons or subpoena.

275. On December 11, 2015, Plaintiff moved to terminate his probation owing to the destruction of subject matter jurisdiction during trial.

276. The State neither responded to nor opposed the motion.

277. On January 12, 2016, Plaintiff subsequently moved to vacate an ostensibly void judgment of conviction, owing to the destruction of subject matter jurisdiction.

278. The State neither responded to nor opposed that motion. The State, therefore, admitted the jurisdictional facts alleged.

279. Following the State's highly belated disclosure that the grand jury proceedings were never recorded, Plaintiff moved again to vacate his void judgment of conviction, premised on a lack of subject matter jurisdiction arising out of Assistant Bar Counsel's alleged participation in the grand jury proceeding as a testimonial witness, whose personal knowledge was limited to attorney disciplinary matters, on or about December 27, 2016.

280. The State did not oppose the Motion to Vacate.

281. Plaintiff was damaged as the proximate result of the State's malicious prosecution, suffering unlawful incarceration, deprivation of personal liberty upon release, loss of his professional certification, loss of personal reputation, prestige, and other deleterious effects.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants McGuinn, Lee, Broccolino, McCrone, Tucker, and State of Maryland, jointly and severally:

a.    An AWARD of compensatory damages in the amount of two million dollars ($2,000,000.00);

b.    An AWARD of punitive damages in the amount of two million dollars ($2,000,000.00), inasmuch as the malicious prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXIII – TORTIOUS INTERFERENCE WITH CONTRACT

282.  The allegations of ¶¶ 1- 281 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

283.  All named Defendants acted wrongfully and improperly, to impute and perpetuate Plaintiff's void or unlawful judgment of

conviction and its sentencing implications and consequences, to interfere with the conduct of Plaintiff's lawful business, even after Plaintiff had demonstrated quite conclusively that the trial court acted beyond its subject matter authority and that the indictment/grand jury proceeding was fatally defective; rather than apply the law dispassionately and impartially, instead the said Defendants acted to protect Bar Counsel and members of State government. It was only after the Plaintiff had interposed his subject matter jurisdiction challenge and *began to copy former Chief of the Criminal Appeals Division, Brian S. Kleinbord, Esq., a highly ethical prosecutor* against whom Plaintiff has prevailed in certain criminal representation on appeal, that the State – in the Executive – apparently elected no longer to oppose Plaintiff's request for *vacatur* of the conviction in question. The Judiciary, however, has been implacable, presumably at Bar Counsel's insistence, which has remained committed to the "conviction" in question, even after the Executive has abandoned it. Bar Counsel, however, has no standing to assert the validity of a criminal conviction the Executive has abandoned.

284. On October 7, 2013, the date of Plaintiff's void/unlawful conviction, Plaintiff had contracts for representing the following clients in at least the matters listed below:[12]

a. Mr. Ellsworth Hercules in an employment matter against ISG Illumination Systems, LLC, in which he was seeking unpaid salaries and bonuses in the amount of over $1,000,000,00;

b. `Judith Wilhelm – in a domestic relations matter, the value of settlement which was estimated between one and one and a half million ($1,000,000.00 - $1,500,000.00) dollars.

c. Ms. April Brown – in a civil rights matter for excessive force against a Baltimore County police officer and Baltimore County Schools, as parent and next friend of her minor child, on a third contingency in a claim whose estimated worth was $35,000.00. As a result of our advocacy, preliminarily, the Baltimore County Police Department had taken disciplinary action against the police officer in question.

d. Ms. Laura Pastuszek – in an employment matter against the Harford County Schools on a one third contingency, whose value was estimated to be one hundred fifty thousand dollars ($150,000.00).

e. Ms. Maria (Mitchell) Asgeirsdottir - representation in an ongoing domestic relations matter in the Circuit Court for Prince George's County, the value of which was approximately three hundred thousand dollars ($300,000.00), for a flat fee of five thousand dollars ($5,000.00).

---

12    At the time of the instant state action, Plaintiff was preparing to sit for the Florida bar and was accepting a far lower volume of case work only with high values, in anticipation of relocation to the western Florida panhandle (Cape San Blas) area and limiting future practice to aviation government contract law.

f.    Mothers Opposing Bullying, LLC, a non-profit organization in the Dallas/Ft. Worth area, which in October, 2012, had been named by Club Corp., Dallas, as a non-profit/charity of particular merit, with the value of Plaintiff's services going to an issue of a contract with the Dallas County Schools, for implementation of an anti-bullying and law enforcement diversion program, whose value is estimated at $1.5M annually. (The Dallas County Schools administer at least a dozen independent school districts in the greater Dallas Metroplex, with a student population of nearly half a million students.)

g.    Ms. Roxanne Hercules, in an employment matter against the United States Government and her employing agency, the Department of Homeland Security.

h.    Mr. Marcus Bland, in an employment discrimination matter.

i.    Ms. Trish Briscoe in a civil rights matter regarding the wrongful death of her husband, Mr. Ernest Briscoe, who died in the custody of the State of Maryland Division of Correction from untreated diabetes and pancreatic cancer.

285.  In October, 2013, Plaintiff had executed a contract to purchase a home in the Cape San Blas area of the western Florida panhandle, and had given the agent a deposit of approximately three thousand dollars ($3,000.00) in earnest money on the contract. The contract sale price of the property in question was two hundred thirty thousand ($230,000.00) dollars.

286.  In October, 2013, Plaintiff was obligated to a residential lease on his townhouse rental in Lebanon, PA for an additional nine (9) months at a monthly rent of $1,200.00.

287.  With execution of the CSI Trinidad contract and receipt of payment from the client, noted *infra*, and the above-stated work, Plaintiff expected to close on the Cape San Blas property; pay off the lease term on his Lebanon, PA rental; and, purchase a second property in nearby Lititz, PA.  Plaintiff suffered injury to his bodily integrity and health, as stated, *supra*; he suffered severe emotional distress; and, he suffered injury to his property and professional reputation, including loss of the earnest money, cancellation of the sales contract on the Cape San Blas property, and loss of all his personalty.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to all named Defendants, jointly and severally:

a.    An AWARD of compensatory damages in the amount of five million dollars ($5,000,000.00);

144

b.    An AWARD of punitive damages in the amount of five million dollars ($5,000,000.00), inasmuch as the tortious conduct at issue was intentional and actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXIV – TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE

288.    The allegations of ¶¶ 1-287 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

289.    On October 7, 2013, the date of Plaintiff's void conviction, Plaintiff had pre-contractual verbal agreements based upon a letter of intent from the sovereign state of Trinidad and Tobago, and had actually commenced work based upon that letter of intent for representing the following client in the matter listed below:

a.    Mr. Ellsworth Hercules and Consumer Smart Illumination, LLC, in a government contract matter with the Republic of Trinidad and Tobago, for LED lighting retrofitting of two major airports (Piarco International and Robinson), the value of which was approximately twelve million dollars ($12,000,000.00) to the

company, with the prospective representation agreement calling for the payment of four (4%) per cent of the total contract value in fee. If the airport project was deemed successful by the Trinidadian government, the master service agreement included a provision for further work to include retrofitting of all government installations (seaport and buildings) as well as highways, estimated in value to be nearly thirty million ($30,000,000.00) dollars.

b. CSI had also entered into pre-contractual discussions with the Commonwealth of the Bahamas and the Republic of Iceland for similar airport lighting conversion work.

290. All the named Defendants, by unlawfully detaining, arresting, convicting, imprisoning, punishing Plaintiff, refusing to vacate the conviction, and by suspending his license to practice law, tortiously interfered with his prospective economic advantage in pursuing his chosen field of professional endeavor and the property privileges and rights that accrue or would have accrued as a result of realizing his potential for very high income with the advent of the CSI contract in particular.

291. Plaintiff was directly and proximately injured in his personal health, property, contract rights and discharge of contract responsibilities as a result of Defendants' tortious interference, in an amount of at least a million dollars ($1,000,000.00), and his client's interests were adversely affected between five and thirty million

dollars ($5,000,000.00 - $30,000,000.00), more or less, depending on the relevant contractual and settlement implications.

292.    Inasmuch as Defendants' tortious interference constituted criminal prosecution and sentencing, involving two hundred sixty-three (263) days' incarceration and the curtailment of freedom of the Plaintiff's ability to leave the jurisdiction as a probationer, the interference in question was actually malicious.

WHEREFORE, Plaintiff, Philip J. Sweitzer, respectfully prays this Court for the following relief against all the aforesaid Defendants:

a.    An AWARD of compensatory damages in the amount of five million dollars ($5,000,000.00);

b.    An AWARD of punitive damages in the amount of five million dollars ($5,000,000.00), inasmuch as the tortious conduct at issue was intentional and actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXIII – NEGLIGENT HIRING, RETENTION OR SUPERVISION

293.    The allegations of ¶¶ 1-292 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

294.    Defendant Lee is an employee of Defendant Attorney Grievance Commission of Maryland, an independent agency of the Defendant, State of Maryland.

295.    Defendants Grossman and Lawless as Bar Counsel, were under a duty of care to effectively supervise Defendant Lee and all other employees in the employ of the Attorney Grievance Commission of Maryland. This supervisory responsibility included a duty of care to ensure that Defendant Lee does not engage in matters beyond her statutory authority, including concentrating power by colluding with the Executive, to abuse the process of criminal prosecution to procure what – ostensibly – is a civil, disciplinary result. Specifically, he was under an duty to ensure that Defendant Lee does not act as a criminal accuser in a grand jury proceeding. He

also was responsible to ensure she does not accuse disabled attorneys of "faking it" after a stroke episode or of "evading service," when they are – in fact – functionally blind.

296. Defendants Grossman and Lawless failed to discharge their supervisory responsibility by limiting Defendant Lee's contact with a criminal proceeding, and by refusing to reassign the Tsai matter to another attorney in his office, indicating in writing to the Plaintiff in July, 2013, that he saw "no reason" to reassign Ms. Lee after Plaintiff complained of Ms. Lee's demonstrably malicious conduct toward him in a prior proceeding. *Ms. Lee subsequently conceded conflict by substituting out of the matter and interposing the appearance of Defendant Hein.* Defendant Grossman also did not contain or correct Defendant Lee's abuses as to Plaintiff's physical disabilities.

297. As a direct and proximate consequence of the failure of Defendant Grossman to effectively supervise Defendant Lee, Plaintiff was damaged in his person, his bodily integrity, his professional reputation and his property.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants State of Maryland; Attorney Grievance Commission of Maryland and Defendant Grossman, jointly and severally:

a.    An AWARD of compensatory damages in the amount of one million dollars ($1,000,000.00);

b.    An AWARD of punitive damages in the amount of one million dollars ($1,000,000.00), inasmuch as the prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXVI – NEGLIGENT HIRING, RETENTION OR SUPERVISION

298.    The allegations of ¶¶ 1-297 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

299. Likewise, Defendants Broccolino and Gibson, as the State's Attorney for Howard County, Maryland, is and was under a duty to effectively supervise the Defendant, Ms. McGuinn, and to ensure that she did not collude with the judiciary for the purpose of concentrating state power against those criminally accused. He was also under a duty to supervise her use and participation in grand jury proceedings, to ensure that the proceedings in question were properly recorded and transcribed, and that the minutes/transcripts of the grand jury were available for inspection by those criminal accused.

300. Defendants Broccolino and Gibson failed to properly exercise supervisory control of Defendant McGuinn.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants State of Maryland; Defendant Broccolino, the State's Attorney for Howard County, jointly and severally:

a.      An AWARD of compensatory damages in the amount of one million dollars ($1,000,000.00);

151

b.    An AWARD of punitive damages in the amount of one million dollars ($1,000,000.00), inasmuch as the prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXVII – NEGLIGENT HIRING, RETENTION OR SUPERVISION

300.   The allegations of ¶¶ 1-299 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

301.   Defendant Frankenberry is an employee of Defendant Department of Public Safety and Correctional Services, an agency of the Defendant, State of Maryland.

302.   Defendant Moyer, as the Secretary of the Department of Public Safety and Correctional Services (hereinafter, "DPSCS"), is under a duty of care to effectively supervise Defendant Frankenberry and all other employees within the employ of DPSCS.. This supervisory responsibility includes a duty of care to ensure that

Defendant Frankenberry does not engage in duplicative, concentrated and forceful or extortionate conduct in the discharge of her professional responsibilities. This duty also includes that she does not exceed her statutory authority, including concentrating power by colluding with the Judiciary, to abuse the process of criminal sentencing, in this case through the actual threat of a violation of probation and reincarceration, to procure funds for the Client Protection Fund of Maryland, monies which should never have been paid by the Fund.

303. Defendant Moyer failed to discharge his supervisory responsibility by permitting Agent Frankenberry to initiate a violation of probation proceeding against the Plaintiff on or about July 15, 2015, for the purpose of effecting collection of monies paid by the Client Protection Fund of the Bar of Maryland, an agency of the Judiciary, which the Fund, through Counsel was attempting to collect concurrently through civil action. As such, both the Executive and Judicial branches of government were attempting to enforce the identical obligation against the Plaintiff, and Defendant Moyer did not rein in Agent Frankenberry.

304. Eventually, on or about January 28, 2016, after threatening the Plaintiff with reincarceration for nearly six (6) months, the DPSCS dismissed the violation of probation charge. As such, Plaintiff prevailed on the violation of probation charge.

305. Plaintiff was subjected to threat of reincarceration, emotional distress, and was injured in his person, property and reputation.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants State of Maryland, Department of Public Service and Correctional Services and its Secretary, Stephen T. Moyer, jointly and severally:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of three million dollars ($500,000.00), inasmuch as the prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXIX– PROFESSIONAL NEGLIGENCE (MEDICAL)

306.    The allegations of ¶¶ 1-300 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

307.    From October 7, 2013 until June 25, 2014, Plaintiff was involuntarily in the custody of the State of Maryland, committed to the Howard County Detention Center, and hostile to his involuntary commitment.

308.    Howard County and the State of Maryland had contracted the Defendants Con Med Healthcare Management, Inc., (hereinafter, "ConMed") to provide constitutionally-required State medical services to detainees and inmates in the Howard County Detention Center for the period in question.

309.    John Doe 1, M.D. (appears to read "L Zimmer" on medical record, though illegible) and John Doe 2, M.D., (appears to read "G. Marion" on medical record, though illegible) were either

employees or medical professionals under contract to Defendant ConMed at all relevant times.

310. Plaintiff's institutional medical records indicate the presence of a "persistent, non-healing foot ulcer" on his right foot from mid-April until release in late June, 2014. Plaintiff presented himself for twice daily dispensation of anti-hypertensive medications at the medical suite of the Howard County Detention Center.

311. On one of the medical records in question, in relation to the persistent foot ulcer, the medical record reads "non-diabetic."

312. Under the standard of care, the medical professionals in question had a duty to perform, at a minimum, at least a routine blood culture on the infected foot wound, and a routine blood glucose check before rendering an incorrect diagnosis of "non-diabetic."

313. The said medical professionals conducted neither test, however, and could not, therefore, have possibly determined that Plaintiff was "non-diabetic" under the standard of care. In fact, there was *no testing whatsoever* of either the bacterial nature of the infection or of the Plaintiff's diabetic status.

314. As such, Defendants Con Med Health Care Management, Inc., and their employees or physician contractors were professionally negligent. As Plaintiff has specified, *supra*, this neglect was not merely negligent: it was deliberately indifferent.

315. As a direct and proximate result of Defendants' negligence, Plaintiff was damaged in his bodily integrity and suffered severe and persistent health consequences and emotional distress. The emotional distress was severe.

316. Consequently, on September 12, 2014, Plaintiff was admitted to the Meritus Health Medical Center in Hagerstown, MD with diabetic hyperglycemia, and the same persistent non-healing foot wound. His hemoglobin A1C level exceeded 12 and blood glucose was nearly 600 at the time, demonstrating persistent hyperglycemia; and, he eventually contracted osteomyelitis and was consequently subject to extended daily administration of intravenous antibiotic and wound therapy for nearly a year.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendants State of Maryland, Department of Public Service and Correctional Services

157

and its Secretary, Stephen T. Moyer; Defendant Howard County, Maryland, and Defendants Con Med Healthcare Management, Inc., Nurse Jane Doe (Alban) and John Doe, M.D. 1 and John Doe, M.D. 2, jointly and severally:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the amount of three million dollars ($500,000.00), inasmuch as the negligence was deliberate, and likely rose to the level of gross negligence;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXIX – PROFESSIONAL NEGLIGENCE (LEGAL)

317.  The allegations of ¶¶ 1-316 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

318.  At the relevant times set forth in this Complaint pertaining to the criminal indictment brought by the State of

158

Maryland, until rendition of verdict and imposition of sentence, Plaintiff had contracted with Clarke F. Ahlers, Esq., for legal services as his defense counsel, and Mr. Ahlers appeared as Plaintiff's legal representative. Mr. Ahlers, therefore, had a duty to represent the Plaintiff with undiluted loyalty, competence and diligence.

319.   Mr. Ahlers filed a single pretrial motion. Mr. Ahlers specifically did not ask to have grand jury transcripts disclosed.

320.   Mr. Ahlers filed no post-trial motions.

321.   Mr. Ahlers was largely unprepared for trial, in effect using a coffee break at the lunch recess to "prepare" the Plaintiff for testimony.

322.   Mr. Ahlers introduced almost no defense exhibits.

323.   Mr. Ahlers did not raise the subject matter jurisdiction defense at trial, which would have required the trial judge to dismiss the indictment.

324.   Mr. Ahlers did not object to the trial court's failure to preserve the half hour chambers conference as a part of the trial record, even when specifically asked on the record, which would have required the trial judge to either amend the record and show

that the ultimate purpose of the sham proceeding was to procure an attorney disciplinary consequence.

325.  Mr. Ahlers, in sum, effectively permitted the Plaintiff to be extorted with consideration at sentencing for compelled disbarment.

326.  Mr. Ahlers did not note, for the record, that the amount of the "restitution" the trial judge ordered to be paid, fifty-seven thousand dollars ($57,000.00), was different in amount from the amount he found to be "owing" the Complainant, Dr. Tsai, as a matter of contract, reflected on the "settlement sheet;" and, Mr. Ahlers, therefore, also did not note at sentencing that there was no fact-finding whatsoever to support the Court's subsequent restitution order, rendering the sentence illegal.

327.  As a consequence, Plaintiff was prejudiced by ineffective assistance of trial counsel, was wrongfully convicted and sentenced. Mr. Ahlers's representation feel below an objective standard of reasonableness and was negligent.  Plaintiff suffered enormous indignities while in State custody and lost professional standing and enormous professional and contract opportunity, as noted, *supra*.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to Defendant Clarke F. Ahlers, Esq.:

a.   An AWARD of compensatory damages in the amount of one million dollars ($1,000,000.00);

b.   An AWARD of punitive damages in the amount of one million dollars ($1,000,000.00), inasmuch as the negligence was deliberate, and likely rose to the level of gross negligence;

c.   An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.   Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

## COUNT XXVII - DEFAMATION

328.   The allegations of ¶¶ 1-327 are incorporated by reference in this paragraph, as though restated and set forth in full herein.

329.   The State of Maryland, Defendants Attorney Grievance Commission of Maryland, Grossman, Broccolino, McGuinn, Tsia, McCrone, Tucker, Dwyer, Lee, Hein and several other actors

161

identified in the *ad damnum* clause, *infra*, continue to falsely represent that the Plaintiff's October 7, 2013 conviction and subsequent imposition of judgment on April 28, 2014, is valid, despite the State of Maryland's specific failure to oppose Plaintiff's subject matter jurisdiction challenge, his representation that the judgment is void, or that the entire charging process was defective and colored by structural bias. The conduct is ongoing and is false. The information is freely available on the date of the instant complaint over the public channel of the Internet, continuing to this day.

330. Ascribing criminality to the Plaintiff is inherently defamatory. It is also actually malicious. The State continues to report the Plaintiff's conviction as a matter of fact, which is reflected all over the public media in screaming detail.

331. The State does not dispute that Assistant Bar Counsel appeared as a criminal accuser at the inception of the prosecution.

332. It is beyond reasonable dispute, therefore, that Plaintiff's judgment of conviction is void, or – at a minimum – unlawful and wrongful and that the State's continued ascription of criminality is false.

333. As a direct and proximate result of the State's false representations, Plaintiff has suffered significant damage, as herein already alleged, *supra*.

WHEREFORE, Plaintiff, Philip J. Sweitzer, prays this Honorable Court for the following relief, as to all named Defendants, jointly and severally:

a.    An AWARD of compensatory damages in the amount of five hundred thousand dollars ($500,000.00);

b.    An AWARD of punitive damages in the five hundred thousand dollars ($500,000.00), inasmuch as the prosecution was actually malicious;

c.    An AWARD of attorney's fees and the costs of bringing the instant action; and,

d.    Such other and further equitable, injunctive and other relief as this Court may find reasonable, just, and within the scope of its sound discretion.

163

Respectfully submitted,

Philip J. Sweitzer
P.O. Box #4464
Gettysburg, PA 17325
Telephone:  717.660.6600
Email:  pjsweitzer@gmail.com

## VERIFICATION

I, Philip J. Sweitzer, named Plaintiff in the instant Complaint, have personal knowledge of the information to which I hereby attest; am an adult individual at least eighteen (18) years of age and competent to testify in a judicial proceeding in the State of Maryland; and, certify with my signature below, under the criminal penalties of perjury, that the foregoing statements are true and correct, to the best of my knowledge, information and belief.

Philip J. Sweitzer

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

Philip J. Sweitzer